COMMONWEALTH vs. JASON COLON.

No. 10-P-23.

Suffolk. February 8, 2011. - December 6, 2011.

Present: KANTROWITZ, MILLS, & VUONO, JJ.

*Assault and Battery. Practice, Criminal,* Sentence. *Statute,* Construction. *Evidence,* Prior conviction, Criminal records, Cross-examination, Relevancy and materiality.

Discussion of the Massachusetts armed career criminal act and its Federal counterpart, the persuasiveness of Federal courts' interpretation of the Federal act despite differences in both language and procedure from the Massachusetts act, and the applicability of the "modified categorical approach" when determining the sufficiency of the evidence in the narrow range of cases where the statutory or common-law definition of a prior offense does not conclusively bring it within the category of "violent crimes." [12-17]

This court concluded that harmful battery and reckless battery are violent crimes under the Massachusetts armed career criminal act, G. L. c. 140, § 121, but offensive battery is not, in that, while none of the crimes defined in the assault and battery statute falls within the classification of crimes enumerated in § 121 as a predicate offense [17-18], harmful battery and reckless battery have, as an element, the use of "physical force" sufficient to implicate the sentencing enhancement under § 121, but offensive battery, which is defined as an offensive touching that is an affront to the victim's personal integrity, does not [18-21]; and in that offensive battery does not, in the ordinary case, involve conduct with the requisite risk to qualify as a "violent crime" under the residual clause of § 121 [21-22]; on the other hand, the additional elements of the offense of assault and battery on a police officer, in the ordinary case, present a sufficient additional risk of serious physical injury to bring the offense within the meaning of a "violent crime" as defined by the residual clause [22-24].

At the trial of an indictment charging the defendant with being an armed career criminal based on three predicate offenses, the evidence was sufficient to convict the defendant on the basis of two predicate convictions of assault and battery on a police officer, but not on the basis of a conviction of assault and battery, where the Commonwealth did not prove that that conviction was based on harmful or reckless, rather than offensive, battery. [24-25]

A criminal defendant who never challenged a conviction on direct appeal or pursuant to Mass.R.Crim.P. 30(b) could not collaterally attack the final judgment on that conviction in later proceedings. [25]

At a criminal trial, the judge did not err or abuse his discretion in restricting the defendant's right to cross-examine a witness on a collateral issue. [25-26]

INDICTMENTS found and returned in the Superior Court Department on August 3, 2004.

The cases were tried before *Patrick F. Brady*, J.

*Nona E. Walker*, Committee for Public Counsel Services, for the defendant.

*John P. Zanini*, Assistant District Attorney, for the Commonwealth.

MILLS, J. A Superior Court jury convicted the defendant of assault and battery by means of a dangerous weapon, G. L. c. 265, § 15B(*b*); carrying a firearm without a license, G. L. c. 269, § 10(*a*); and possession of ammunition without a firearm identification card (FID card), G. L. c. 269, § 10(*h*). In a second trial, another Superior Court jury convicted him on one count of being an armed career criminal based on three predicate offenses, G. L. c. 269, § 10G(*c*), as a sentence enhancement on his conviction under G. L. c. 269, § 10(*h*). The defendant appeals. We find no error in his convictions from the first trial.

As to the second trial, the defendant's appeal raises the issue whether a certified record of conviction constitutes sufficient evidence that the defendant was convicted of a predicate "violent crime," see G. L. c. 140, § 121, as appearing in St. 1998, c. 180, § 8, for purposes of the armed career criminal sentencing enhancements, G. L. c. 269, § 10G(*a*)-(*c*). We hold that a certified record of conviction is sufficient when the predicate offense is assault and battery on a police officer (ABPO), G. L. c. 265, § 13D (two of the predicate offenses here), but that it is not when the predicate offense is assault and battery, G. L. c. 265, § 13A(*a*), which was one of the predicate offenses here. Accordingly, we reverse the defendant's conviction under G. L. c. 269, § 10G(*c*), as an armed career criminal based on three predicate violent crimes and remand for his resentencing as an armed career criminal based on two predicate violent crimes, G. L. c. 269, § 10G(*b*).

1. *Background.* We recite the trial evidence related to the defendant's claims of error on appeal.

a. *The first trial.* In April, 2006, the defendant was tried on three indictments charging assault and battery by means of a dangerous weapon, carrying a firearm without a license, and possession of ammunition without an FID card. The events giving

rise to this prosecution occurred early on June 7, 2004. The defendant and two companions were in a black vehicle with tinted windows. The defendant was in the passenger seat. The defendant fired numerous shots at another car with two occupants.

State troopers responded. They identified the vehicle in which the defendant was riding; stopped it; ordered its occupants, including the defendant, out; and arrested them. At first finding no weapons, the troopers walked along the road on which the vehicle had been stopped and found a firearm and a holster. The two occupants of the other car arrived for a showup and positively identified the defendant and his companions.

The defendant gave a statement to the State police. In this statement, he asserted that he and his companions had been shot at and that the driver of the car returned fire in self-defense. He confessed to throwing the firearm out the car window when he saw the troopers. Subsequently, he also confessed to being the one who fired at the other car.

Witnesses testified to the above facts at the first trial. The defendant neither testified nor presented evidence. His attorney, in his opening statement, put forth a self-defense theory. On cross-examination defense counsel questioned the driver of the other car, Hugo Paez, about his hobby of working with cars and whether he raced cars. Paez replied, "No, I don't race. I have a perfect driving record." The following day, defense counsel proffered a copy of Paez's record of driving violations and requested that it be admitted for purposes of impeaching him by contradiction. The judge excluded the driving record as collateral to the issue of self-defense and insufficiently probative of Paez's credibility or bias.

After hearing standard instructions, the jury convicted the defendant of all three charges. The defendant noticed his appeal from these convictions in May, 2006.

b. *The second trial.* In April, 2007, the defendant was tried before a different jury, see G. L. c. 278, § 11A, on the count of the indictment for carrying a firearm without a license (G. L. c. 265, § 10[a]) that sought an enhanced sentence under G. L. c. 269, § 10G(c), for being an armed career criminal who had committed three prior violent crimes. Several probation department officials testified regarding the defendant's criminal history,

including a 2004 conviction of assault and battery and 2001 and 2002 convictions of ABPO. Certified records of these three convictions were admitted as the Commonwealth's proof of predicate offenses. The certified records identified the convictions only by the terms "assault and battery on a police officer" and "assault and battery," and no evidence was presented as to whether these convictions resulted from harmful, reckless, or offensive batteries, see part 3, *infra,* or as to the circumstances of the three predicate convictions.

The defendant requested that the judge strike his 2004 assault and battery conviction from evidence. He argued that, because the conviction resulted from a guilty plea to a complaint which originally charged him with armed robbery but was subsequently amended to charge assault and battery and attempted larceny[1] separately, he was improperly convicted. The judge rejected the request, and the conviction was admitted.

The defendant moved for a required finding of not guilty, arguing that the Commonwealth's failure to introduce any evidence of the circumstances underlying his three convictions meant that there was insufficient evidence to show that he had been convicted of three "violent crimes." The judge denied the motion, reasoning that assault and battery always has, as an element, at least minimal physical force, bringing it within the relevant statutory definition of "violent crime." The judge also announced his intention to instruct according to this understanding, and the defendant objected.

The judge instructed, inter alia, that "[a]s a matter of law, the definition of violent crime includes the crimes of assault and battery on a police officer and assault and battery . . . ." The jury found the defendant guilty on the armed career criminal count of the indictment. The defendant noticed his appeal from this conviction on April 27, 2007.

c. *Appeal.* In this consolidated appeal, the defendant argues (1) insufficient evidence of, and erroneous jury instructions about, statutorily required predicate offenses in the second trial; (2) erroneous admission of one of the defendant's convictions as evidence at the second trial; and (3) erroneous exclusion of evidence in the first trial.

---

[1]The Commonwealth voluntarily dismissed the attempted larceny charge.

2. *The armed career criminal act statutory scheme.* Our decision requires some explication of the statutory scheme at issue, so we detour here for a detailed discussion.

a. *The Massachusetts and Federal armed career criminal acts.* In order to sustain a conviction under the Massachusetts armed career criminal act (Massachusetts ACCA), G. L. c. 269, § 10G(*a*)-(*c*), the Commonwealth must prove that the defendant has been previously convicted of at least one "violent crime."[2] For purposes of the Massachusetts ACCA, a "violent crime" is defined as

> "any crime punishable by imprisonment for a term exceeding one year . . . that: (i) has as an element the use, attempted use or threatened use of physical force or a deadly weapon against the person of another; (ii) is burglary, extortion, arson or kidnapping; (iii) involves the use of explosives; or (iv) otherwise involves conduct that presents a serious risk of physical injury to another."

G. L. c. 140, § 121, as appearing in St. 1998, c. 180, § 8. See G. L. c. 269, § 10G(*e*). The Massachusetts ACCA therefore has three components: (1) the "physical force" or "force" clause; (2) the enumerated crimes provisions; and (3) the residual clause.

The Massachusetts ACCA's language largely replicates the Federal armed career criminal act (Federal ACCA), 18 U.S.C. § 924(e) (2006). *Commonwealth* v. *Ware*, 75 Mass. App. Ct. 220, 223 (2009). The Federal ACCA mandates a sentencing enhancement for those previously convicted of three "violent felon[ies]" or serious drug offenses. 18 U.S.C. § 924(e)(1) (2006). The Federal ACCA further defines a "violent felony" in 18 U.S.C. § 924(*e*)(2)(B) (2006) as

> "any crime punishable by imprisonment for a term exceed-

---

[2]As relevant to this prosecution, the Massachusetts ACCA, G. L. c. 269, § 10G(*c*), inserted by St. 1998, c. 180, § 71, provides, "Whoever, having been previously convicted of three *violent crimes* . . . arising from separate incidences, violates the provisions of said paragraph (*a*), (*c*), or (*h*) of . . . section 10 shall be punished by imprisonment in the state prison for not less than 15 years nor more than 20 years" (emphasis supplied). The provisions for sentence enhancement based on one predicate offense, G. L. c. 269, § 10G(*a*), and two predicate offenses, G. L. c. 269, § 10G(*b*), also refer, respectively, to a predicate "violent crime" or "violent crimes."

ing one year . . . that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . ."

The term "crime punishable by imprisonment for a term exceeding one year" is further defined to include certain State law misdemeanors. See 18 U.S.C. § 921(a)(20)(B) (2006); *Logan* v. *United States*, 552 U.S. 23, 27 (2007).

The Federal ACCA definition of "violent felony"[3] is almost identical to the definition of "violent crime" that the Massachusetts Legislature adopted in G. L. c. 140, § 121, and incorporated into the Massachusetts ACCA by G. L. c. 269, § 10G(*e*). The two statutes differ only in four ways. First, the Massachusetts ACCA uses the term "violent crime" while the Federal ACCA uses the term "violent felony"; this apparent distinction ultimately collapses because the Federal ACCA encompasses both felonies and misdemeanors as predicate offenses.[4] See 18 U.S.C. § 921(a)(20)(B) (2006); *Logan* v. *United States*, *supra*. Second, the Massachusetts ACCA adds use of a deadly weapon to its force clause. Third, the Massachusetts ACCA adds kidnapping to its list of enumerated

---

[3]Other Federal statutes define predicate offenses using language similar to the "has, as an element, the use, attempted use, or threatened use of physical force" language of the Federal ACCA. See 18 U.S.C. § 16(a) (2006) (defining "crime of violence"); 18 U.S.C. § 921(a)(33) (2006) (defining "misdemeanor crime of domestic violence").

[4]The Commonwealth argues that the Legislature's decision to deviate from the language of the Federal ACCA by using "violent crime" in place of "violent felony" alters the analysis of qualifying predicate offenses. Compare 18 U.S.C. § 924(*e*) with G. L. c. 269, § 10G. We are not persuaded. Like the Massachusetts ACCA, the Federal ACCA is not limited to crimes formally defined as felonies; Congress chose to define "violent felony" to include State law misdemeanors punishable by more than two years' imprisonment. 18 U.S.C. § 921(a)(20)(B) (2006) (defining "crime punishable by imprisonment for a term exceeding one year" as used in 18 U.S.C. § 924[e][2][B]). See *Logan* v. *United States*, 552 U.S. at 27. Cf. *Houston* v. *Federal Aviation Admin.*, 679 F.2d 1184, 1193 (5th Cir. 1982) ("Ours is not to reason why . . ."). We conclude that the Legislature merely intended to use one statutory provision, G. L. c. 140, § 121, to include certain misdemeanors as ACCA predicate offenses where Congress used two separate statutory provisions, 18 U.S.C. § 921(a)(20)(B) and 18 U.S.C. § 924(e)(2)(B).

crimes. Fourth, the Massachusetts ACCA residual clause refers to "serious risk of physical injury to another," compared to the Federal ACCA's residual clause, which refers to "serious *potential* risk of physical injury to another" (emphasis supplied).

When a Massachusetts statute "tracks [a] Federal statute, we have looked to the Federal case law for guidance in interpreting" our cognate statute. *Commonwealth* v. *One 1986 Volkswagen GTI Auto.*, 417 Mass. 369, 373 (1994). See *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 611 (1980) (citing *Poirier* v. *Superior Ct.*, 337 Mass. 522, 527 [1958], and *Rollins Environmental Servs., Inc.* v. *Superior Ct.*, 368 Mass. 174, 179 [1975]); *Commonwealth* v. *Young*, 453 Mass. 707, 712 n.8 (2009). Given that G. L. c. 140, § 121, so closely tracks 18 U.S.C. § 924(e)(2)(B) (except as noted above), we consider the Federal courts' construction of the Federal statute highly persuasive in interpreting the Massachusetts ACCA.[5]

b. *Massachusetts ACCA procedure.* Although the Massachusetts ACCA largely replicates the Federal ACCA in its language, we pause to note one meaningful practical difference: a defendant facing sentence enhancement under the Massachusetts ACCA is entitled to a jury trial. See G. L. c. 278, § 11A. In contrast, a defendant facing the Federal ACCA enhancement is not. See *Shepard* v. *United States*, 544 U.S. 13, 25-26 (2005) (plurality opinion).[6] Thus, substantive similarities between the two statutes notwithstanding, because of the Massachusetts jury trial require-

___

[5]The Commonwealth urges that we consider only Federal authority as it existed at the time of the enactment of the Massachusetts ACCA. We see no reason so to limit our consideration of persuasive authority. See *Scaccia* v. *State Ethics Commn.*, 431 Mass. 351, 354-355 (2000) (looking to Federal law for guidance when interpreting Massachusetts gratuity statute even though Massachusetts statute predated Federal cognate statute); *Commonwealth* v. *Young*, 453 Mass. at 712 (citing Federal authority interpreting Federal Bail Reform Act postdating enactment of cognate Massachusetts statute).

[6]This point is not entirely free from doubt. Compare *Apprendi* v. *New Jersey*, 530 U.S. 466, 490 (2000) (applying right to jury trial under Sixth Amendment to United States Constitution; "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" [emphasis supplied]), with *Shepard* v. *United States*, 544 U.S. at 26-28 (Thomas, J., concurring) (asserting that Sixth Amendment jury trial guarantee applies to factfinding concerning prior convictions). Because G. L. c. 278, § 11A, provides for subsequent offender jury trials, we need not address this issue.

ment the Commonwealth may establish the applicability of the Massachusetts ACCA by using witness testimony and a wider range of documentary evidence than is available in the Federal courts. Concomitantly, a Massachusetts court deciding the applicability of the Massachusetts ACCA must also ensure the procedural protections that such a trial affords.

c. *The "categorical approach" and the "modified categorical approach."* Under the Federal ACCA, 18 U.S.C. §§ 921(20) and 924(e), sentencing judges use the "categorical approach" to determine whether a prior conviction qualifies as a predicate offense. See, e.g., *Taylor* v. *United States*, 495 U.S. 575, 602 (1990). This approach "generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." *Ibid.*

The Supreme Judicial Court followed this approach in interpreting similar language in the State pretrial detention statute, G. L. c. 276, § 58A.[7] *Commonwealth* v. *Young*, 453 Mass. at 711-716. We conclude that this straightforward categorical approach also applies to Massachusetts ACCA jury trials when the statutory definition of the prior offense unambiguously qualifies that offense as a predicate conviction.

The *Young* case, however, involved a statute that defined a predicate offense on the basis of the element or elements of the defense or "the nature" of the offense, which the court interpreted as "focus[ing] on the elements of the crime rather than the particular facts underlying a complaint or indictment," and did not consider the application of the categorical approach to offenses that may be based on different elements, that is, whose statutory definitions do not conclusively settle the issue whether the offense qualifies as a predicate offense. See *id.* at 713-715 & n.9. Absent controlling authority on this question under Massachusetts law, we look to Federal law for guidance.

---

[7]At the time the defendants in *Young* were charged, G. L. c. 276, § 58A, as amended by St. 1996, c. 393, § 5, provided, in relevant part, "The [C]ommonwealth may move . . . for an order of pretrial detention or release on conditions for a felony offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person of another, or any other felony that by its nature involves a substantial risk that physical force against the person of another may result . . . ." The November, 2010, amendment to G. L. c. 276, § 58A, did not alter this language. See St. 2010, c. 256, § 125.

Under Federal law, "[the] categorical approach . . . may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases . . . ." *Taylor* v. *United States*, 495 U.S. at 602. Accordingly, in the narrow range of cases where the statutory definition of an offense does not conclusively situate it within the relevant category of predicate offenses, a sentencing Federal judge may look to extrinsic evidence to determine which material elements formed the basis of the defendant's prior conviction. See *Johnson* v. *United States*, 130 S. Ct. 1265, 1273 (2010), citing *Nijhawan* v. *Holder*, 557 U.S. 29, 41 (2009); *United States* v. *Holloway*, 630 F.3d 252, 256-257 (1st Cir. 2011). This "modified categorical approach" "permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record — including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." *Johnson* v. *United States*, 130 S. Ct. at 1273.

We find this authority persuasive. We conclude that, for Massachusetts ACCA purposes, in the narrow range of cases where the statutory or common-law definition of a prior offense does not conclusively bring it within the category of "violent crimes," the familiar sufficiency of the evidence standard mandates this modified categorical approach. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). If a certified record of conviction identifies a statutory or common-law term which could refer to multiple crimes with different material elements, then the certified record permits any rational factfinder to conclude, beyond a reasonable doubt, that the defendant was convicted of a "violent crime" only if *all* crimes defined by that statutory or common-law term are "violent crimes." See *ibid.*; *United States* v. *Holloway*, 630 F.3d at 256-257. See also *Shepard* v. *United States*, 544 U.S. at 15-17, 24-26. If the statutory or common-law crime encompasses several offenses at least one of which is *not* a "violent crime," then a rational factfinder would require some additional evidence[8] that the conviction at issue was of one of the offenses included in that term that *is* a "violent

---

[8]We need not detail all the possible forms that this evidence might take. Because the defendant is entitled to a jury trial on the count seeking an armed

crime" in order to conclude, beyond a reasonable doubt, that the defendant was previously convicted of a "violent crime." See *Commonwealth* v. *Latimore, supra.* Accord *United States* v. *Holloway*, 630 F.3d at 259-260.

3. *Assault and battery, ABPO, and the Massachusetts ACCA.* We turn now to the defendant's conviction on the armed career criminal enhancement charge based on three predicate convictions, one of assault and battery and two of ABPO. The defendant argues that there was insufficient evidence to sustain his armed career criminal conviction because the Commonwealth presented no evidence that his prior convictions of assault and battery and ABPO met the statutory definition of "violent crime." On the same basis, he argues that the judge erroneously instructed that the statutory definition of "violent crime" included his prior convictions of assault and battery and ABPO as matter of law. We agree with the defendant as to his assault and battery conviction. We agree with the judge as to the ABPO convictions.

a. *Assault and battery.* "Assault and battery is a common law crime now set forth in G. L. c. 265, § 13A. . . . Because there are harmful batteries and offensive batteries, there is a bifurcation in the law of battery." *Commonwealth* v. *Burke*, 390 Mass. 480, 482 (1983). See *Commonwealth* v. *Boyd*, 73 Mass. App. Ct. 190, 194-195 (2008) (recognizing as distinct harmful battery, offensive battery, and battery defined as a "wilful, wanton, and reckless act [resulting] in personal injury to another," i.e., reckless battery). Harmful battery, reckless battery, and offensive battery have different material elements, so a certified record of conviction that refers only to "assault and battery" could refer to any one of these three sets of material elements.

We conclude that, while harmful battery and reckless battery

career criminal sentence enhancement, see part 2.b, *supra,* the trial judge may admit any evidence that would have been admissible at the original trial of the alleged predicate offense. Contrast *United States* v. *Sneed*, 600 F.3d 1326, 1333 (11th Cir. 2010) (holding, based on *Shepard* v. *United States*, 544 U.S. at 23-26, that "courts may not use police reports to determine whether predicate offenses under [18 U.S.C.] § 924[e][1] were committed on 'occasions different from one another' "). Moreover, we note that the Commonwealth need not retry the prior conviction and prove all the elements of the predicate offense beyond a reasonable doubt; the Commonwealth need only prove *which statutory or common-law definition* was the basis of the prior conviction.

are violent crimes under the Massachusetts ACCA, offensive battery is not.[9] We explain this result under the three subparts of the definition of "violent crime" for purposes of the Massachusetts ACCA, see part 2.a, *supra:* (1) the enumerated crimes; (2) the force clause; and (3) the residual clause.

i. *The enumerated crimes.* The Massachusetts ACCA expressly enumerates, as predicate offenses, "burglary, extortion, arson or kidnapping; . . . [or any offense that] involves the use of explosives." G. L. c. 140, § 121. None of the crimes defined by G. L. c. 265, § 13A(*a*), falls into these classifications, so an assault and battery conviction does not qualify under these subsections of the definition of violent crime in G. L. c. 140, § 121, as a Massachusetts ACCA predicate offense.

ii. *The force clause.* A crime qualifies as a predicate offense under the Massachusetts ACCA if it is "any crime punishable by imprisonment for a term exceeding one year . . . that: (i) has as an element the use, attempted use or threatened use of physical force or a deadly weapon against the person of another." G. L. c. 140, § 121. We have not previously applied this language to assault and battery, so we look to the Federal interpretation of the nearly identical language in the Federal ACCA for guidance.

In *Johnson* v. *United States*, 130 S. Ct. at 1271, the United States Supreme Court analyzed the similarly bifurcated law of Florida battery. The court held that the "element [of] the use . . . of physical force" required to qualify as a predicate offense under the force clause means "*violent* force" (emphasis in original), that is, "force capable of causing physical pain or injury to another person."

While *Johnson* interprets the Federal ACCA, we find its reasoning persuasive in interpreting the Massachusetts statute. See part 2.a, *supra.* We therefore hold that, in order to qualify as a "violent crime" as defined in G. L. c. 140, § 121, the relevant crime must include, as an element, violent or substantial force capable of causing pain or injury.

We find *Johnson* persuasive because of its application of

---

[9]"An assault is an offer or attempt to do a battery. See *Commonwealth* v. *Shaffer*, 367 Mass. 508, 515 (1975). Every battery includes an assault. *Commonwealth* v. *Stratton*, 114 Mass. 303 (1873). Hence we need only consider the elements of criminal battery." *Commonwealth* v. *Burke, supra.*

long-standing rules of statutory construction. "[W]ords in a statute must be considered in light of the other words surrounding them." *Commonwealth* v. *Brooks*, 366 Mass. 423, 428 (1974). We therefore interpret the statutory term "physical force" in the context of the category it helps to define, "violent crime." "Violent" means extreme, extensive, or substantial force. See *Johnson* v. *United States*, 130 S. Ct. at 1271, citing, inter alia, Webster's New Intl. Dictionary 2846 (2d ed. 1954); 19 Oxford English Dictionary 656 (2d ed. 1989); Black's Law Dictionary 1706 (9th ed. 2009). Cf. *United States* v. *Belless*, 338 F.3d 1063, 1068 (9th Cir. 2003), interpreting "misdemeanor crime of domestic violence" in 18 U.S.C. § 921(a)(33)(A) ("As a matter of law, we hold that the physical force to which the federal statute refers is not de minimis"); *Flores* v. *Ashcroft*, 350 F.3d 666, 672 (7th Cir. 2003), interpreting "crime of violence" as used in 18 U.S.C. § 16[a] ("To avoid collapsing the distinction between violent and non-violent offenses, we must treat the word 'force' as having a meaning in the legal community that differs from its meaning in the physics community. The way to do this is to insist that the force be violent in nature — the sort that is intended to cause bodily injury, or at a minimum likely to do so").

The Commonwealth urges that we interpret "physical force" broadly so as to include any touching, no matter how slight. Even were we persuaded that the Commonwealth's interpretation is permissible, we would reach the same result. At best, the Commonwealth's proffered interpretation is just as plausible as the interpretation we adopt here. If two readings of a statute are equally plausible, the statute is ambiguous. It is well-established that "we cannot interpret an ambiguous statute in a manner that disadvantages a criminal defendant." *Commonwealth* v. *Hamilton*, 459 Mass. 422, 436 (2011).

Accordingly, we conclude that the Legislature, by using "violent" to describe the predicate offenses necessary for a Massachusetts ACCA enhancement, intended to require the "element [of] the use . . . of physical force" necessary for such offenses to include only substantial physical force capable of causing pain or injury. Applying this definition to the crimes punishable by G. L. c. 265, § 13A(*a*), we conclude that, while

harmful battery and reckless battery do have, as an element, the use of "physical force" sufficient to implicate the sentencing enhancement, offensive battery does not.

Harmful battery is "[a]ny touching 'with such violence that bodily harm is likely to result.' " *Commonwealth* v. *Burke*, 390 Mass. at 482, quoting from *Commonwealth* v. *Farrell*, 322 Mass. 606, 620 (1948). Because it has "violence" as a material element, harmful battery has, as an element, the use of "physical force" as we interpret it above.

Reckless battery is a "wilful, wanton, and reckless act [resulting] in personal injury to another." *Commonwealth* v. *Boyd*, 73 Mass. App. Ct. at 194-195, quoting from *Commonwealth* v. *Welch*, 16 Mass. App. Ct. 271, 274-275 (1983). Because it has not just violence but injury as a material element, reckless battery has "physical force" as we interpret it above as an element.

But offensive battery, defined as "an offensive touching" which is an "affront to the victim's personal integrity," *Commonwealth* v. *Burke*, 390 Mass. at 483, does not have, as an element, the use of "physical force" as we have defined it.[10] In order to establish offensive battery, the Commonwealth need only prove "that the defendant, without justification or excuse, intentionally touched the victim, and that the touching, *however slight*, occurred without the victim's consent" (emphasis supplied). *Commonwealth* v. *Hartnett*, 72 Mass. App. Ct. 467, 476 (2008). Such de minimis touchings include tickling, *ibid.*, and spitting, *Commonwealth* v. *Cohen*, 55 Mass. App. Ct. 358, 359-360 (2002). While unconsented-to tickling and spitting may be deserving of criminal opprobrium, it strains credulity to consider them "violent" or involving "physical force."[11] We conclude

---

[10]The fact that "[e]very battery includes an assault," *Commonwealth* v. *Burke, supra* at 482, does not alter the result. Because an offensive battery does not have, as an element, the use of "physical force" as we have interpreted it, we conclude that an assault based on "an offer or attempt to do" an offensive battery, *ibid.*, concomitantly does not have, as an element, "attempted use" or "threatened use" of "physical force" within the meaning of G. L. c. 140, § 121.

[11]Though we apply the Massachusetts ACCA to assault and battery to reach this conclusion, we emphasize that our decision works no change in the long-standing law of assault and battery. See, e.g., *Commonwealth* v. *McCan*, 277 Mass. 199, 203 (1931) ("Assault and battery is and always has been a misdemeanor *and may be insignificant in character*" [emphasis supplied]).

that a conviction of offensive battery based on such a slight touching does not require substantial physical force capable of causing pain or injury and, accordingly, that "physical force" is not an element.[12]

iii. *The residual clause.*[13] A crime qualifies as a predicate offense under the Massachusetts ACCA if it "otherwise involves conduct that presents a serious risk of physical injury to another." G. L. c. 140, § 121. Again, we have not previously applied this language to assault and battery, so we look to the Federal interpretation of the similar language ("otherwise involves conduct that presents a serious potential risk of physical injury to another") in the Federal ACCA, 18 U.S.C. § 924(e)(2)(B).

The Federal courts have applied this language to a wide variety of crimes. See, e.g., *James* v. *United States*, 550 U.S. 192 (2007) (Florida attempted burglary); *Begay* v. *United States*, 553 U.S. 137 (2008) (New Mexico driving under influence); *Sykes* v. *United States*, 131 S. Ct. 2267, 2271-2275 (2011) (Indiana conviction of vehicle flight from law enforcement officer); *United States* v. *Dancy*, 640 F.3d 455, 465-470 (1st Cir. 2011) (Massachusetts ABPO); *Miller* v. *United States*, 792 F. Supp. 2d 104, 106-107 (D. Mass. 2011) (same). As demanded by the statutory language, the residual clause inquiry is driven by the level of risk.[14] *Sykes* v. *United States*, 131 S. Ct. at 2273-2275.

The enumerated crimes provide guidance as to the level of risk required in order to constitute a predicate offense. *Id.* at 2273, 2276. "[T]he proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a

---

[12]Even before *Johnson*, other Federal courts reached this same conclusion when confronted with similar State criminal statutes. See, e.g., *Flores* v. *Ashcroft*, 350 F.3d at 672 (applying 18 U.S.C. § 16[a] to Indiana battery); *United States* v. *Simms*, 441 F.3d 313, 314, 316-317 (4th Cir.), cert. denied, 549 U.S. 905 (2006) (applying Federal ACCA to Maryland battery).

[13]Neither party raised the applicability of the residual clause below, and neither party argues its applicability on appeal. Nevertheless, "a reviewing court is free to rely on an alternative legal theory" if supported by the record and the findings. *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 102 (1997).

[14]The proper standard has generated considerable dispute, and at least one current member of the Supreme Court of the United States has expressed the view that the residual clause is unconstitutionally vague. See, e.g., *Sykes* v. *United States*, 131 S. Ct. at 2284 (Scalia, J., dissenting); *Derby* v. *United States*, 131 S. Ct. 2858, 2860 (2011) (Scalia, J., dissenting from denial of certiorari).

serious potential risk of injury to another." *James* v. *United States*, 550 U.S. at 208. The offenses "typically involve[] purposeful, 'violent,' and 'aggressive' conduct," *Begay* v. *United States*, 553 U.S. at 144-145, but need not, *Sykes* v. *United States*, *supra* at 2275-2276.

Offensive battery[15] does not, in the ordinary case, involve conduct with the requisite risk. Typically, offensive battery involves a slight touching, which may be "insignificant in character." *Commonwealth* v. *McCan*, 277 Mass. 199, 203 (1931). While this conduct may be "purposeful," even "aggressive," *Begay* v. *United States*, *supra*, we similarly find it implausible to call it "violent" in the ordinary case. See *id.* at 144-145. We conclude that conduct that is "insignificant in character," *Commonwealth* v. *McCan*, *supra*, does not, in the ordinary case, "present[] a serious risk of physical injury to another," G. L. c. 140, § 121.[16] Accordingly, we conclude that offensive battery does not qualify as a "violent crime" under the residual clause.

b. *ABPO*. In addition to the elements required for assault and battery, conviction of ABPO requires proof "that the offense be committed on a 'public employee who was engaged in the performance of his duty at the time' of the assault and battery." *Commonwealth* v. *Correia*, 50 Mass. App. Ct. 455, 457 (2000), quoting from G. L. c. 265, § 13D, as amended by St. 1990, c. 498. The Commonwealth must also prove that the defendant knew his victim was a police officer. See *Commonwealth* v. *Deschaine*, 77 Mass. App. Ct. 506, 514-515 (2010) (interpreting assault and battery on correction officer, G. L. c. 127, § 38B). Thus, the Commonwealth may meet its burden by proving harmful battery, reckless battery, or offensive battery, plus the additional elements. See *Commonwealth* v. *Correia*, *supra*. We con-

---

[15]Because we conclude that harmful battery and reckless battery qualify as "violent crimes" under the force clause, we need not consider whether they qualify under the residual clause.

[16]Of course, "[o]ne can always hypothesize unusual cases in which" an ordinarily nonviolent crime does pose a serious risk of injury. See *James* v. *United States*, 550 U.S. at 207. A spitter, for example, could have a lethal infectious disease, thereby committing an offensive battery which does pose a sufficiently serious risk. But this hypothetical scenario does not mean that offensive battery is a categorically violent crime; the proper inquiry focuses on the ordinary case.

clude that ABPO, even when based on offensive battery, qualifies as a "violent crime" under the residual clause.[17]

The residual clause, as discussed above, qualifies an offense as a "violent crime" for purposes of the Massachusetts ACCA if the offense "otherwise involves conduct that presents a serious risk of physical injury to another." G. L. c. 140, § 121. We again focus on the ordinary case of ABPO. To be convicted of ABPO, the perpetrator must know that his victim was a law enforcement officer, and the officer must be on duty. See *Commonwealth* v. *Correia*, 50 Mass. App. Ct. at 457. See also *Commonwealth* v. *Deschaine*, 77 Mass. App. Ct. at 515. Even in the case of a slight touching, "insignificant in character," *Commonwealth* v. *McCan*, 277 Mass. at 203, the assault and battery is committed on a peace officer while he or she is engaged in performing a vital public function. Because the involvement in even a minor dispute with a civilian distracts from the officer's duties, the offense creates a public risk.

We find persuasive the reasoning of the United States Court of Appeals for the First Circuit in *United States* v. *Dancy*, 640 F.3d at 469: "ABPO arises only in a narrow set of circumstances: an interaction between an individual and police officers in which the individual knows that he or she confronts an officer and that the officer is discharging his or her law enforcement duties at the time of the confrontation." A confrontation with an individual who usually carries a lethal weapon, for whom it may be necessary at times to carry out his or her responsibilities with decisive force, is bound to risk physical injury; "[i]n addition to risk to the officers and to the assailant, the confrontation between the officer and the assailant may put bystanders at risk of injury as well." *Id.* at 470.

Moreover, we agree with the *Dancy* court's conclusion that "in the ABPO context purposeful conduct is the norm, and . . . the crime of ABPO 'nearly always involves the intentional striking of a police officer.' " *Id.* at 469, quoting from *United*

---

[17]A conviction of ABPO based on an offensive battery (or an assault based on a threat or offer to commit an offensive battery) would not qualify under the *force* clause. See part 2.a.ii, *supra.* Again, the Commonwealth did not argue, at the second trial or in this appeal, that the defendant's convictions qualified as predicate offenses under the residual clause. See note 13, *supra.*

*States* v. *Fernandez*, 121 F.3d 777, 780 (1st Cir. 1997). As a result, ABPO fits with *Begay*'s guidance that crimes falling within the residual clause "typically involve purposeful, 'violent,' and 'aggressive' conduct." See *Begay* v. *United States*, 553 U.S. at 144-145.

Accordingly, we conclude that the additional elements of ABPO, in the ordinary case, present a sufficient additional risk of serious physical injury to bring the offense within the meaning of a "violent crime" as defined by the residual clause. We therefore conclude that ABPO qualifies as a Massachusetts ACCA predicate offense as matter of law.

c. *The Commonwealth's proof.* Given our interpretation of the Massachusetts ACCA as applied to assault and battery and ABPO, the Commonwealth was required to demonstrate that the defendant's assault and battery conviction resulted from a harmful or reckless battery, not from offensive battery, in order to show that the assault and battery conviction was a "violent crime." The Commonwealth could rely solely on a certified record of conviction to demonstrate that ABPO was "violent crime" for purposes of the Massachusetts ACCA.

Here, the Commonwealth offered only certified records of conviction identifying the defendant's predicate offenses as assault and battery and ABPO. The Commonwealth presented no extrinsic evidence to indicate whether the convictions were based on harmful, reckless, or offensive battery. Nor did the Commonwealth present evidence of the underlying facts of the defendant's convictions from these matters. Given our interpretation of the definition of "violent crime" in G. L. c. 140, § 121, for purposes of the Massachusetts ACCA, the Commonwealth's evidence, viewed under the standard of *Commonwealth* v. *Latimore*, 378 Mass. at 676-677, was insufficient to sustain the armed career criminal conviction based on three predicate offenses because there was insufficient proof that the defendant's assault and battery conviction was based on harmful or reckless battery.[18] This evidence, however, was sufficient to establish the defendant's guilt on the lesser included offense of armed career

---

[18]Similarly, the judge's instruction that assault and battery is, as matter of law, a "violent crime" was erroneous and prejudiced the defendant. See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994). We note that *Johnson* v.

criminal status based on two predicate offenses, namely, the ABPO convictions.

Therefore, on the count of the indictment for sentence enhancement under G. L. c. 269, § 10G(*c*), we reverse the judgment, set aside the verdict, and remand for resentencing under the armed career criminal enhancement provision based on two predicate "violent crimes," G. L. c. 269, § 10G(*b*). See *Commonwealth* v. *Kastner*, 76 Mass. App. Ct. 131, 141 (2010); *Commonwealth* v. *Montalvo*, 76 Mass. App. Ct. 319, 331-332 (2010).

4. *Other claims.* We briefly address the defendant's two other claims of error. Neither has merit.

a. *Evidence of improper conviction.* The defendant argues that the judge erroneously denied his request to strike his 2003 assault and battery conviction from evidence because it resulted from a guilty plea to a procedurally defective amended complaint. There was no error.

The defendant, having never challenged that conviction on direct appeal or pursuant to Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001), may not now collaterally attack this final judgment in these proceedings. See *Commonwealth* v. *Lopez*, 426 Mass. 657, 662-663 (1998). This judgment, entitled to the presumption of regularity, see *id.* at 664, was properly admitted evidence. Moreover, the Commonwealth correctly notes that the defendant, through counsel, requested the amendment to the original complaint and pleaded guilty to the assault and battery count of the amended complaint knowingly, intelligently, and voluntarily. There was no error.

b. *Evidentiary ruling.* The defendant argues that the judge's decision to exclude the certified driving record of the driver of the other car, Paez, from evidence impermissibly intruded on his right to cross-examine Paez to demonstrate lack of credibility and bias. The defendant has the burden to demonstrate that the judge abused his discretion in restricting the defendant's right to cross-examination. *Commonwealth* v. *Avalos*, 454 Mass. 1, 7 (2009).

The defendant has not met this burden. We conclude that the

*United States, supra,* which instructed our analysis here, was not available to assist the judge and counsel at trial in 2007.

judge's ruling that Paez's driving record was collateral to the issue of self-defense at trial was correct. See *Commonwealth* v. *Sperrazza*, 379 Mass. 166, 169 (1979); *Commonwealth* v. *Jordan*, 439 Mass. 47, 55 (2003); *Commonwealth* v. *Avalos*, 454 Mass. at 8-9; Mass. G. Evid. § 611(b) (2011). The driving record was only marginally relevant to Paez's credibility or bias. See *Commonwealth* v. *Jordan*, 439 Mass. at 55; *Commonwealth* v. *Mercado*, 456 Mass. 198, 202-204 (2010); Mass. G. Evid. § 403 and § 611(b) & comment. There was no error.

5. *Conclusion.* On the count of the indictment for armed career criminal enhancement of the sentence based on three predicate violent crimes, G. L. c. 269, § 10G(*c*), the judgment is reversed, the verdict is set aside insofar as it finds the defendant had committed three prior violent crimes, and the matter is remanded for resentencing on the lesser included offense of an armed career criminal enhancement based on two predicate violent crimes, G. L. c. 269, § 10G(*b*). The remaining judgments are affirmed.

*So ordered.*