NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-1743                                    Appeals Court

COMMONWEALTH  vs.  JAMES L. WIDENER.

No. 15-P-1743.

Plymouth.     April 13, 2017. - June 15, 2017.

Present: Kafker, C.J., Grainger, & Kinder, JJ.

Firearms. Practice, Criminal, Motion to suppress, Required
    finding, Witness, Sentence. Evidence, Immunized witness,
    Prior conviction. Witness, Immunity. Assault and Battery
    by Means of a Dangerous Weapon.

Indictments found and returned in the Superior Court
Department on March 25, 2011.

A pretrial motion to suppress evidence was heard by Raymond
P. Veary, Jr., J., and the cases were tried before Angel Kelley
Brown, J.

Timothy St. Lawrence for the defendant.
Stacey L. Gauthier, Assistant District Attorney, for the
Commonwealth.

KINDER, J. Following a jury trial in the Superior Court,

the defendant was convicted of unlawful possession of a firearm,

G. L. c. 269, § 10(a); unlawful possession of ammunition, G. L.

c. 269, § 10(h); unlawful possession of a large capacity feeding

device, G. L. c. 269, § 10(m); and unlawful possession of a loaded firearm, G. L. c. 269, § 10(n).[1]  The indictments further alleged that the defendant previously had been convicted of three violent crimes or serious drug offenses subjecting him to enhanced sentencing pursuant to the armed career criminal act (ACCA), G. L. c. 269, § 10G(c).  At a later jury-waived trial on the sentencing enhancement charges, the trial judge found the defendant guilty of the subsequent offender allegations related to his convictions of unlawful possession of a firearm and unlawful possession of ammunition based on three predicate offenses.  Consequently, pursuant to the ACCA, he was sentenced to a consolidated mandatory minimum term of imprisonment of not less than fifteen years and not more than fifteen years and one day.  On appeal, the defendant claims (1) his motion to suppress the firearm and the ammunition should have been allowed, (2) the evidence was insufficient to sustain his convictions, and (3) the evidence was insufficient to prove that he had three prior qualifying convictions under the ACCA.  The motion to suppress properly was denied, and we conclude that the evidence was sufficient to sustain the underlying convictions.  However, we

---

[1] The defendant was acquitted of resisting arrest, G. L. c. 268, § 32B.  The Commonwealth dismissed before trial the charges related to operating a motor vehicle with a suspended license.

vacate the sentence imposed pursuant to the ACCA and remand for resentencing for the reasons that follow.

Background. 1. Motion to suppress. In the fall of 2010, members of a law enforcement task force identified the defendant as a suspect in a series of commercial property burglaries in Plymouth and Bristol Counties. The police learned, through a confidential informant and recorded conversations between the informant and the defendant, that the defendant was in Florida purchasing guns and drugs for transport to Massachusetts. As of February 2, 2011, the police knew that the defendant was returning to Massachusetts driving a gray Jeep Commander sport utility vehicle and that he would likely be with his girl friend, Brianna Tobin. Within twenty-four hours of receiving the information, the police observed the defendant on Route 3A in Kingston, Massachusetts, in a gray Jeep Commander, with a woman matching Tobin's description. Police were also aware that the defendant had a criminal history including crimes of violence, that he was not licensed to drive in Massachusetts, that there were three outstanding warrants for his arrest, and that neither he nor Tobin were licensed to carry a firearm in Massachusetts. Police observed the defendant pull into a gasoline station. They approached the defendant as he returned to his vehicle, and identified themselves. The defendant

immediately fled on foot. He was apprehended shortly thereafter, unarmed.

Once the defendant was apprehended, another officer approached Tobin who was still seated in the passenger seat of the gray Jeep Commander. The officer, with his gun drawn and police identification visible, repeatedly screamed, "Police" and ordered Tobin to place her hands where the officer could see them. When Tobin failed to do so, and continued to move within the vehicle, the officer opened the door and removed her from the vehicle. As soon as the officer placed his hands on Tobin, he observed a firearm in plain view on the floor of the front passenger's side. The vehicle was secured and police applied for a warrant to search the vehicle. The warrant was authorized and the subsequent search of the vehicle resulted in the seizure of the firearm and ammunition.

2. Additional trial evidence. The defendant and Tobin were charged, inter alia, with possession of the firearm seized from the vehicle. Tobin agreed to cooperate with the Commonwealth and testified against the defendant at trial. Pursuant to the cooperation agreement, the charges against her were dismissed. She testified that the firearm belonged to the defendant and that he left it with her in the vehicle for fear that someone would see it if he took it into the gasoline station with him.

Another witness, Adam Long, testified at trial and identified the firearm as one that he sold to the defendant in Daytona, Florida, in late 2010.  Long testified that at the time of the sale, the defendant was accompanied by his girl friend.

Discussion.  1.  Motion to suppress.  The motion judge, who was not the trial judge, denied the defendant's motion to suppress the firearm and the ammunition after an evidentiary hearing.  He concluded that the exit order and the arrest of Tobin were lawful in the circumstances.  On appeal, the defendant's principal claim is that the exit order that led to the seizure of the firearm was not justified by safety concerns. We disagree.

"On review of a motion to suppress, we do not disturb the judge's findings of fact unless they are clearly erroneous." Commonwealth v. Sicari, 434 Mass. 732, 746 (2001).  We "give[] substantial deference to the judge's ultimate findings and conclusions of law," Commonwealth v. Morse, 427 Mass. 117, 122 (1998), quoting from Commonwealth v. Magee, 423 Mass. 381, 384 (1996), and "leave to the judge the responsibility of determining the weight and credibility to be given oral testimony presented at the motion hearing."  Commonwealth v. Contos, 435 Mass. 19, 32 (2001), quoting from Commonwealth v. Eckert, 431 Mass. 591, 592-593 (2000).  "We conduct an independent review of the judge's application of constitutional

principles to the facts found." Commonwealth v. Hoose, 467 Mass. 395, 400 (2014).

There are three bases upon which an exit order issued to a passenger in a vehicle may be justified:  (i) an objectively reasonable concern for the safety of the officer or other persons, (ii) reasonable suspicion that the passenger is engaged in criminal activity, or (iii) pragmatic reasons, e.g., to facilitate an otherwise lawful search of the vehicle pursuant to the automobile exception to the warrant requirement. Commonwealth v. Cruz, 459 Mass. 459, 466-467 (2011).  "[I]t does not take much for a police officer to establish a reasonable basis to justify an exit order or search based on safety concerns."  Commonwealth v. Gonsalves, 429 Mass. 658, 664 (1999).  The test is an objective one, taking into consideration the totality of circumstances.  Id. at 665.

Here, based on a multiagency and multijurisdictional investigation, the police had information that the defendant was transporting drugs and firearms from Florida to Massachusetts. Police were also aware that the defendant would be accompanied by Tobin, his girl friend, whom the informant "had identified . . . as accompanying [the defendant] down south on these trips to purchase guns and Percocets."  Thus, the officer who approached Tobin had reason to believe that (1) the passenger in the vehicle was the defendant's girl friend, (2) she had

witnessed the defendant's flight and arrest, and (3) there were firearms in the vehicle. In these circumstances, we discern no error in the motion judge's conclusion that the passenger "reasonably could be viewed by the police as a confederate of [the defendant], . . . prepared to assist him in a variety of different ways, including the violent upset of his arrest."

We are not persuaded by the defendant's claim that the force used in seizing Tobin was "disproportionate." "In evaluating whether the police exceeded the permissible scope of the stop, the issue is one of proportion. 'The degree of suspicion the police reasonably harbor must be proportional to the level of intrusiveness of the police conduct.'" Commonwealth v. Sinforoso, 434 Mass. 320, 323 (2001), quoting from Commonwealth v. Williams, 422 Mass. 111, 116 (1996). Because Tobin refused to show her hands when ordered to do so, and continued to move within the vehicle, the officer's heightened concerns for his safety were entirely reasonable. See Commonwealth v. Obiora, 83 Mass. App. Ct. 55, 59 (2013). We conclude that the exit order that revealed the firearm in plain view was justified based upon the officer's objectively reasonable concern for his safety, and therefore we discern no error in the denial of the motion to suppress.

2. Sufficiency. The defendant argues that the uncorroborated testimony from "immunized" witnesses Tobin and

Long was insufficient to prove the defendant's possession of the firearm and the ammunition. The defendant relies on G. L. c. 233, § 20I, inserted by St. 1970, c. 408, which provides that "[n]o defendant in any criminal proceeding shall be convicted solely on the testimony of, or the evidence produced by, a person granted immunity under the provisions of section twenty E." His reliance on this statute is misplaced.

First, "[t]here is no requirement that a cooperating witness's testimony be corroborated unless the witness is immunized under G. L. c. 233, § 20E." Commonwealth v. Lessieur, 472 Mass. 317, 330 (2015). Nothing in the record indicates that either Tobin or Long received immunity pursuant to § 20E. Tobin testified pursuant to a cooperation agreement with the Commonwealth in exchange for dismissal of the charges against her. According to Long, he was granted immunity from Federal charges in the Middle District of Florida in exchange for his testimony. Thus, although both Tobin and Long testified in exchange for favorable treatment from prosecuting authorities, neither was immunized pursuant to § 20E. Nevertheless, the trial judge instructed the jurors that the witnesses were immunized and that their testimony should be treated with caution.[2]

---

[2] The judge also instructed the jury that the uncorroborated testimony of an immunized witness was not sufficient to convict

Second, even if Tobin and Long qualified as immunized witnesses under § 20E, their testimony was sufficiently corroborated.  See Commonwealth v. Vacher, 469 Mass. 425, 440 (2014) (corroboration for immunized witnesses required on only one element of proof essential to conviction).  Police officers testified regarding the position of the firearm in the vehicle, the operability of the firearm, that the firearm was loaded, and that it could accept a detachable magazine holding twelve rounds.  Thus, there was ample corroboration from nonimmunized witnesses on the essential elements of the offenses.  Simply put, when considered as a whole and in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), the evidence was sufficient to permit a rational juror to find beyond a reasonable doubt the essential elements of the charged offenses.

3.  Sentencing under the ACCA.  At the jury-waived trial on the sentencing enhancement charges, the Commonwealth introduced certified copies of four prior convictions:  assault and battery committed on July 19, 2001 (guilty plea on December 6, 2001); assault and battery by means of a dangerous weapon (ABDW) committed on March 18, 2004 (guilty plea on February 9, 2005);

---

the defendant.  This part of the instruction, which benefited the defendant, should not have been given because the witnesses were not immunized pursuant to § 20E.

possession with intent to distribute a class B controlled substance committed on January 8, 2008 (guilty plea on October 20, 2008); and assault by means of a dangerous weapon committed on January 11, 2008 (guilty plea on October 20, 2008). Witnesses identified the defendant as the person previously convicted in each case. On the underlying convictions of unlawful possession of a firearm and unlawful possession of ammunition, the trial judge found the defendant guilty of the subsequent offender portion of the indictments which alleged that the defendant had "been previously convicted of three violent crimes or three serious drug offenses, or any combination thereof totaling three, arising from separate incidences" and imposed the mandatory minimum enhanced sentence of fifteen years. G. L. c. 269, § 10G(c), inserted by St. 1998, c. 180, § 71.

The defendant challenges his convictions and his sentence as an armed career criminal for two reasons. First, he claims that ABDW is not a violent crime within the meaning of the ACCA. Second, he claims that the 2008 convictions of (1) assault by means of a dangerous weapon, and (2) possession with intent to distribute a class B controlled substance, should be treated as a single offense under the ACCA because the underlying conduct was close in time and the charges were resolved by guilty pleas in a single proceeding. We address these arguments in turn.

a.  ABDW as a violent crime.  Under the ACCA, a "violent crime" is:

> "any crime punishable by imprisonment for a term exceeding one year . . . that:  (i) has as an element the use, attempted use or threatened use of physical force or a deadly weapon against the person of another; (ii) is burglary, extortion, arson or kidnapping; (iii) involves the use of explosives; or (iv) otherwise involves conduct that presents a serious risk of physical injury to another."

G. L. c. 140, § 121, as appearing in St. 1998, c. 180, § 8.  See G. L. c. 269, § 10G(e).  The Supreme Judicial Court has ruled that the fourth clause of the definition of violent crime, the so-called "residual" clause, is unconstitutionally vague. Commonwealth v. Beal, 474 Mass. 341, 351 (2016).  Accordingly, in the circumstances here, the only potentially applicable section of the definition is the first clause, the so-called "force" clause.

To determine whether a prior conviction qualifies as a predicate offense under the ACCA, judges usually apply a "categorical approach."  Commonwealth v. Eberhart, 461 Mass. 809, 815 (2012), quoting from Commonwealth v. Colon, 81 Mass. App. Ct. 8, 15 (2011).  Under this approach, the judge looks "only to the fact of conviction and the statutory definition of the prior offense."  Ibid., quoting from Colon, supra.  However, if the prior conviction was under a broad statute encompassing multiple crimes, not all of which are violent, a judge should

apply a "modified categorical approach," which permits consideration of extrinsic evidence. Id. at 816, quoting from Colon, supra at 16.

The defendant argues that the modified categorical approach should apply in this case because ABDW encompasses both intentional and reckless conduct. Relying on Federal authority, the defendant contends that reckless ABDW does not qualify as a violent crime under the ACCA. See United States v. Parnell, 818 F.3d 974, 981 n.5 (9th Cir. 2016). No Massachusetts court has gone that far.

In analyzing reckless conduct within the crime of simple assault and battery, the Supreme Judicial Court has said that reckless battery has an element of physical force and is sufficient to qualify as a violent crime within the meaning of the ACCA. Eberhart, supra at 818-819.[3] We see no reason to reach a different result with the more serious crime of ABDW. Indeed, we have previously observed that "[i]t is undisputed that, if committed by an adult, an assault and battery by means of a dangerous weapon would be punishable by imprisonment for a term exceeding one year and thus would constitute a violent crime under the Massachusetts ACCA." Commonwealth v. Rezendes,

---

[3] In Eberhart, supra, the Supreme Judicial Court applied the modified categorical approach because simple assault and battery also included the nonviolent offense of offensive battery, which could be committed with de minimis touching.

88 Mass. App. Ct. 369, 372 (2015). Accordingly, the defendant's conviction of ABDW qualifies as a violent crime under the force clause and the trial judge was not required to apply the modified categorical approach.

Even under the modified categorical approach, however, there was extrinsic evidence supporting the conviction of ABDW. The certified copy of the 2004 conviction of ABDW contained evidence of the defendant's identity, the charge, and the guilty plea. It also contained a handwritten notation, "knife." Considering this evidence in the light most favorable to the prosecution, the trial judge could have reasonably concluded beyond a reasonable doubt that ABDW was a crime of violence because it has as an element the use, attempted use, or threatened use of physical force or a deadly weapon against the person of another. See Commonwealth v. Claudio, 418 Mass. 103, 108 (1994) (knife is deadly weapon).

b. Separate incidences. General Laws c. 269, § 10G(c), inserted by St. 1998, c. 180, § 71, provides in relevant part:

> "Whoever, having been previously convicted of three violent crimes or three serious drug offenses, or any combination thereof totaling three, arising from separate incidences, . . . shall be punished by imprisonment in the state prison for not less than 15 years nor more than 20 years" (emphasis supplied).

In a case decided after the sentence here was imposed, the Supreme Judicial Court determined that sentencing enhancement

under the ACCA "applies only when a defendant's previous convictions of three qualifying crimes 'arising from separate incidences' were the results of separate, sequential prosecutions." Commonwealth v. Resende, 474 Mass. 455, 469 (2016). In reaching this conclusion, the court reasoned that sequential prosecutions occur when "the first conviction (and imposition of sentence) occur before the commission of the second predicate crime, and the second conviction and sentence occur before the commission of the third crime." Id. at 466-467.

Here, although the 2008 convictions of (1) assault by means of a dangerous weapon, and (2) possession with intent to distribute a class B controlled substance were for conduct alleged to have occurred on different dates and charged in separate complaints, they resulted from guilty pleas and sentences imposed at a single hearing. The defendant pleaded guilty and received committed jail sentences to both charges, concurrent with each other, on October 20, 2008. Accordingly, under the reasoning of Resende they were not sequential prosecutions and, therefore, did not arise from separate incidences. We therefore conclude, as required by Resende, that these two prior convictions must be considered as one for ACCA purposes.

Following the jury-waived trial on the ACCA allegations, the trial judge found the defendant guilty of the subsequent offender portion of the indictments without reference to the prior convictions upon which she relied.  We can reasonably infer from her findings of guilty and the resulting mandatory minimum sentence of fifteen years that she found at least three prior qualifying convictions, but we cannot discern from the record which three she found to have been proved beyond a reasonable doubt.[4]  Based on our conclusion that the two 2008 convictions cannot be considered separate, sequential convictions under the ACCA, we remand the case for resentencing so that the trial judge can determine whether, in light of our ruling, the defendant has two or three prior qualifying convictions under the ACCA.[5]

---

[4] The trial judge may have found that the defendant was previously convicted of all four of the alleged prior convictions of crimes of violence or serious drug offenses. Although "a certified conviction of [simple] assault and battery is insufficient to prove beyond a reasonable doubt that a defendant committed a 'violent crime' for the purpose of sentencing enhancement under [the ACCA]," Eberhart, 461 Mass. at 819, here there was extrinsic evidence of physical injury observed by the responding officer that the judge may have considered.

[5] We note that the defendant qualifies for a different enhanced sentence under the ACCA if he has two (rather than three) prior convictions of violent crimes or serious drug offenses arising from separate incidences.  G. L. c. 269, § 10G(b).

Conclusion.  For the foregoing reasons, the underlying convictions of unlawful possession of a firearm, unlawful possession of ammunition, unlawful possession of a large capacity feeding device, and unlawful possession of a loaded firearm are affirmed.  The finding that the defendant was guilty as an armed career criminal pursuant to G. L. c. 269, § 10G(c), and the consolidated sentence based on three predicate offenses, are vacated and the case is remanded for resentencing consistent with this opinion.

So ordered.