After a jury trial, the defendant was convicted of assault and battery on a police officer, and resisting arrest.[2] He appeals and his sole argument is that there was insufficient evidence to support his convictions because the Commonwealth failed to prove beyond a reasonable doubt that he was not justified in using self-defense in response to excessive force from the police. We affirm.
"In reviewing evidentiary sufficiency, the Latimore standard governs, that is, 'whether the evidence, in its light most favorable to the Commonwealth, ... is sufficient ... to permit the jury to infer the existence of the essential elements of the crime charged.' " Commonwealth v. Hanson, 79 Mass. App. Ct. 233, 234 (2011), quoting from Commonwealth v. Latimore, 378 Mass. 671, 676-678 (1979).
"An intentional assault and battery is 'the intentional and unjustified use of force upon the person of another, however slight.' " Commonwealth v. Porro, 458 Mass. 526, 529 (2010), quoting from Commonwealth v. McCan, 277 Mass. 199, 203 (1931). "In addition to the elements required for assault and battery, conviction of [assault and battery on a police officer] requires proof 'that the offense be committed on a "public employee who was engaged in the performance of his duty at the time" of the assault and battery.' " Commonwealth v. Colon, 81 Mass. App. Ct. 8, 22 (2011), quoting from Commonwealth v. Correia, 50 Mass. App. Ct. 455, 457 (2000). "The Commonwealth must also prove that the defendant knew his victim was a police officer." Colon, supra.
Based on the evidence, the jury reasonably could have found the following facts. Two witnesses telephoned the police after they observed the defendant and his girl friend arguing on the sidewalk near their residence. One witness heard loud arguing and saw the defendant repeatedly prevent the woman from walking away; that witness was concerned "[t]hat there was going to be a physical altercation." The other witness saw the defendant strike the woman. After that witness sounded her car horn to get attention, the defendant and the woman "ran around the corner to the side of the house."
Shortly thereafter, Fitchburg police Officers Pepple and Rouleau, both in "full duty uniform," arrived at the house. An elderly female, who was gardening in the yard, directed the officers to the basement door on the right side of the house. At that basement door, Rouleau opened the outside screen door to knock on the inside wooden door, identifying himself as a Fitchburg police officer; no one answered.[3] He knocked a second time and the defendant answered the door, looking "red-faced. Very angry." There were fresh-looking bloody scratches on the defendant's neck, and he yelled, "What?" Rouleau asked where the female was who had been involved in the altercation and the defendant responded that it was none of the officer's business. The defendant then attempted to shut the door in Rouleau's face while Rouleau was "in the door frame, threshold"; however, the officer was able to stop the door from closing. As Rouleau started "pushing the door back on" the defendant, and informed him that the officers needed to check on the well-being of the female, the defendant pushed Rouleau in the chest, forcing the officer backwards. Rouleau immediately told the defendant he was under arrest, and instructed him to put his hands behind his back. Rouleau then stepped through the doorway into the apartment in an attempt to handcuff the defendant.[4] On these facts, we are satisfied there was sufficient evidence to establish that the defendant intentionally, without the officer's consent, pushed Rouleau, whom he knew to be a Fitchburg police officer.
Next, "[i]n assessing the sufficiency of the evidence to support a charge of resisting arrest, ... the proper focus is whether, at the time of the interaction, the officer, acting under color of authority, arrested the defendant, and whether the defendant resisted that arrest with force or violence or a means creating a substantial risk of causing bodily injury to the officer." Commonwealth v. Lender, 66 Mass. App. Ct. 303, 305 (2006).
There was ample evidence here to support the defendant's conviction of resisting arrest. As the officers testified at trial, while they were attempting to handcuff the defendant, "a big fight and struggle" ensued because the defendant would not comply with the officers' repeated requests to put his hands behind his back. As the officers were attempting to place the handcuffs on his wrists, the defendant was holding onto the door handle with one hand and "flailing" his other arm toward the wall where various yard equipment was located. He was yelling angrily and telling the officers he was going to "beat the shit" out of them.[5]
Officer Pepple indicated that she was going to spray the defendant with pepper spray, causing the defendant to turn toward Rouleau. At that point, Rouleau gave the defendant a "quick little jab to his nose" with a closed fist, causing the defendant's nose to bleed; nonetheless, the defendant continued to struggle. The defendant also pushed Pepple in the chest and against the door, and spit on her with bloody saliva. Rouleau, with his police baton, next gave the defendant a quick jab to the shoulder area, allowing Pepple to get one handcuff on the defendant. In trying to get the defendant's other arm under control, Rouleau took the defendant by the head and neck area, and brought him to the ground where Pepple was then able to complete the handcuffing process despite the defendant "tensing" and holding his fists out.[6]
The defendant finally stopped resisting after he was handcuffed and Pepple had pushed him against the water heater, telling him to "knock it off," after he tried to "drag [her]" after he was in custody. Rouleau, at that point, was looking for an alternative route out of the basement because, during the struggle, the door they had entered had "closed and locked." Rouleau also suffered an injury to his fingernail.[7]
At trial, the defendant did not argue that he had acted in self-defense; his defense, as the judge described it at the charge conference was, instead, "I didn't do this." Counsel agreed with that characterization at the time. Nonetheless, the judge instructed the jury on the issue of excessive force and told the jurors that, "If there is some evidence that the police used unreasonable or excessive force, the Commonwealth must prove beyond a reasonable doubt that the defendant did not act in self-defense." He then gave the standard self-defense instruction. At trial, defense counsel told the judge that he was satisfied with the jury instructions, and counsel reiterated at oral argument before this court that there was no challenge to the jury instructions. The question whether the police officers used excessive force in arresting the defendant was one for the jurors; to the extent that they found the defendant guilty on these two counts, it is clear that they disbelieved the defendant and his girl friend and rejected that defense. The defendant's attempt to relitigate the issue in this court simply fails.
Based on the evidence presented, and evaluating it in the light most favorable to the Commonwealth, the jurors were permitted to find beyond a reasonable doubt that the defendant committed an assault and battery on Rouleau, and that the police did not use excessive force in making an arrest that the defendant resisted. See Commonwealth v. Dubois, 451 Mass. 20, 28 (2008) ("The weight and credibility of the evidence is the province of the jury").
Judgments affirmed.

The defendant was acquitted of a second charge of assault and battery, on another police officer (count 1); assault and battery on a family or household member (count 2); and intimidating a witness (count 6). Count 5, an assault charge, was dismissed on the defendant's motion for a required finding of not guilty.

When Rouleau first opened the screen door to knock, the "slightly ajar" inside door was "slammed shut."

The defendant's warrantless entry argument fails, as the evidence reasonably established that Rouleau did not enter the defendant's apartment until after the defendant had assaulted him while standing in the "door frame, threshold." Moreover, any argument on constitutional grounds should have been made in a motion to suppress evidence of what occurred after the alleged "unlawful entry." There is no indication in this record that any motion to suppress was filed.

The area in the basement in which this altercation took place was "really dark" and there was yard equipment hanging on the wall and lying on the floor.

At trial, both the defendant and his girl friend provided contradicting testimony. According to them, the defendant never raised a hand against the officers.

A picture of Rouleau's injured fingernail was admitted as an exhibit at trial.