NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12170

COMMONWEALTH  vs.  STEVEN MORA.

Suffolk.     February 6, 2017. - June 29, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, & Budd, JJ.

Firearms.  Motor Vehicle, Firearms.  Search and Seizure, Motor
    vehicle, Warrant, Probable cause.  Practice, Criminal,
    Interlocutory appeal, Judicial discretion, Motion to
    suppress, Warrant, Grand jury proceedings, Indictment,
    Sentence.  Probable Cause.  Evidence, Grand jury
    proceedings.  Grand Jury.

Indictments found and returned in the Superior Court
Department on October 22, 2014.

A pretrial motion to suppress evidence was heard by James
R. Lemire, J.

An application for leave to file an interlocutory appeal
was allowed by Botsford, J., in the Supreme Judicial Court for
the county of Suffolk, and the appeal was reported by her.

Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on June 20, 2016.

The case was reported by Botsford, J.

Richard J. Shea for the defendant.

Ellyn H. Lazar-Moore, Assistant District Attorney, for the Commonwealth.

BUDD, J.  This case is here on the reservation and report of two related matters involving the defendant, Steven Mora, who was indicted on various charges in connection with the possession of an unlicensed firearm.  Two of those charges included sentence enhancement as an armed career criminal pursuant to G. L. c. 269, § 10G (b).  We conclude that the search warrant that yielded the gun, a magazine, and ammunition lacked probable cause and that the Commonwealth failed to present sufficient evidence to the grand jury to support the armed career criminal enhancements.

1.  Background.  a.  The search.  We summarize the facts provided in the affidavit that a Worcester police officer filed in support of an application for a warrant to search a safe found in a motor vehicle driven by the defendant.  See Commonwealth v. O'Day, 440 Mass. 296, 297 (2003) ("our inquiry as to the sufficiency of the search warrant application always begins and ends with the 'four corners of the affidavit'" [citation omitted]).

One summer evening in 2014, that police officer was conducting surveillance and observed a man engaged in what appeared to be hand-to-hand drug transactions in the parking lot

of a convenience store.  This lot was known to be a location where "numerous drug arrests" had occurred.  Approximately thirty minutes into the surveillance, the defendant drove into the lot in a station wagon and approached the suspected drug dealer.  As the two stood together, a third man approached the drug dealer who appeared to conduct a brief transaction with that individual as the defendant looked around nervously.

Following this interaction, the defendant, the drug dealer, and a woman entered the station wagon and left the parking lot. The officer alerted other officers in the area, and the vehicle was stopped shortly thereafter.  A patfrisk of the defendant yielded several hypodermic needles, and the officer learned that the defendant's driver's license was suspended.  A search of the vehicle produced more needles and other drug paraphernalia along with a small safe marked "Fort Knox," which was on the floor of the vehicle behind the driver's seat.  No illegal narcotics were found either in the vehicle or in the possession of any of its occupants.

The defendant was arrested for driving with a suspended license, and the motor vehicle, which was not registered in his name, was towed.  Police took possession of the safe pursuant to an inventory search and determined that there was a heavy metal object inside.  Police learned through research that the safe was designed to secure pistols.  As a result, the officer sought

a search warrant for the contents of the safe, averring that, in his training and experience, heroin addicts often steal anything of value to support their addiction; drug dealers often keep contraband inside of safes to secure their drug supply; and on numerous occasions he had found illegal narcotics, firearms, money, and drug transaction notes in safes belonging to drug dealers.  A warrant for the contents of the safe issued; inside police found a handgun and magazine, two boxes of ammunition, two pill bottles bearing the defendant's name, and two hypodermic needles.

b.  The indictments.  Based on the evidence seized from the safe, a grand jury returned indictments charging the defendant with possession of a large capacity feeding device, possession of ammunition without a firearm identification card, and illegal possession of a firearm.  With regard to the latter two indictments, the defendant also was charged as an armed career criminal pursuant to G. L. c. 269, § 10G (b) (act), on the basis that he had been previously convicted of two violent or serious drug offenses and therefore was subject to enhanced sentencing.[1]

---

[1] A sentence enhancement pursuant to G. L. c. 269, § 10 (b), would result in additional "imprisonment in the state prison for not less than ten years nor more than [fifteen] years" above that imprisonment already imposed in connection with the underlying crime.

c.  Procedural history.  The defendant filed a motion to suppress the evidence recovered from the safe.  A Superior Court judge denied the motion.  The defendant filed a notice of appeal from the judge's order and, subsequently, an application to a single justice of this court for leave to appeal pursuant to Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996).

The defendant also moved to dismiss the sentence enhancements, arguing that there could be no probable cause for them where the grand jury heard no evidence that his second predicate conviction, for unarmed robbery, was a "violent crime" as required by G. L. c. 269, § 10G (e).  That motion was denied by a different Superior Court judge.  The defendant then filed a petition in the county court pursuant to G. L. c. 211, § 3, seeking review of the denial of his motion to dismiss the armed career criminal enhancements.

A single justice reserved and reported both matters for consideration by the full court.

2.  Discussion.  a.  Motion to suppress.  i.  Timeliness. As an initial matter, the Commonwealth argues that we should reject as untimely the defendant's appeal from the denial of his motion to suppress.  The Commonwealth claims that the motion judge did not have the authority to extend, for as long as he

did, the defendant's time for filing his application for leave to appeal. We disagree.

There are two steps to perfecting an interlocutory appeal from an order on a motion to suppress: (1) filing a notice of appeal with the trial court; and (2) applying to a single justice of the Supreme Judicial Court for leave to appeal. Mass. R. Crim. P. 15 (b) (1), as appearing in 422 Mass. 1501 (1996). At the time of the events in this case, the party seeking to appeal had ten days from the entry of the order to file the notice of appeal, or such additional time as a judge in the trial court or a single justice of this court may allow.[2] Id. The trial court's authority to extend the time for filing a notice of appeal is limited to thirty additional days beyond the time set by rule 15 (b) (1). Mass. R. A. P. 4 (c), as amended, 378 Mass. 928 (1979). See Commonwealth v. Jordan, 469 Mass. 134, 141-143 (2014) (discussing interplay of Mass. R. Crim. P. 15 and Mass. R. A. P. 4, and limitation on extension of time that lower court may grant for filing notices of appeal).

---

[2] Rule 15 (b) (1) of the Massachusetts Rules of Criminal Procedure has since been amended, effective August 1, 2016, to provide that the notice of appeal and the application for leave to appeal must be filed within thirty days of the date of entry of the order being appealed from, or such additional time as the lower court or the single justice may order. Mass. R. Crim. P. 15 (b) (1), as appearing in 474 Mass. 1501 (2016).

Here, the order denying the motion to suppress was entered on the Superior Court docket on April 13, 2016, and the defendant filed his notice of appeal on April 22, 2016. The Commonwealth takes no issue with the timeliness of the defendant's notice of appeal. The dispute lies with the second step in the process, i.e., filing the application in the county court for leave to pursue an interlocutory appeal.

At the same time that he filed his timely notice of appeal, the defendant filed in the trial court a motion to extend the time to file his application for leave to appeal by thirty days. The motion judge allowed that request. On May 20, 2016, the defendant filed a second motion for an extension of time, asking for an additional thirty days to file the application, which also was allowed. The defendant filed his application for leave to appeal on June 20, 2016. The Commonwealth argues that the judge's authority to grant an extension of time for filing the application was limited to thirty days beyond the initial ten-day period, which the judge exhausted by granting the defendant's first motion for an extension, and thus that the judge had no authority to grant the second motion for a further extension. To support its argument the Commonwealth relies on Commonwealth v. Demirtshyan, 87 Mass. App. Ct. 737, 740-741 (2015), in which the Appeals Court interpreted the holding in Jordan, 469 Mass. at 140-142, and stated that the authority of a

judge in the trial court to grant an extension for filing an application for leave to appeal is, by analogy, the same as the judge's authority to grant an extension for filing a notice of appeal, i.e., no more than thirty days beyond the expiration of the original time period prescribed by the rule.

We pointed out in Jordan, 469 Mass. at 141-142, that the limitation on a trial court judge's authority to extend the time for filing a notice of appeal derives from Mass. R. A. P. 4 (c). The same cannot be said of the judge's authority with respect to filing the application. "It is important to note that rule 4 (c) governs only extensions of time for filing a notice of appeal in the trial court. Neither rule 4 (c) nor any of the other appellate rules governs extensions of time for the . . . period set out in Mass. R. Crim. P. 15 (b) (1) for filing an application to a single justice of this court for leave to pursue the interlocutory appeal. The authority of a trial court judge or a single justice to extend the time for filing an application derives from rule 15 (b) (1), not from the appellate rules." Jordan, supra at 141 n.15. Rule 15 (b) (1) speaks only of "such additional time as either the trial judge or the single justice . . . shall order." Simply put, there is no express limitation in the rules on a trial court judge's authority to grant an extension of time for filing the application for leave to appeal. A trial court judge, like a single justice of this

court, has discretion to determine a reasonable and appropriate amount of time in the circumstances.[3]

Pursuant to Mass. R. Crim. P. 15 (b) (1), the motion judge in this case was well within his discretion to grant thirty additional days beyond the thirty days previously granted for the filing of the application. The defendant's application, filed on June 20, 2016, in accordance with the judge's grant of additional time, was therefore timely.

ii. Search warrant. "Because a determination of probable cause is a conclusion of law, we review a search warrant affidavit de novo." Commonwealth v. Foster, 471 Mass. 236, 242 (2015). The defendant argues that the search warrant for the safe was improperly issued as the affidavit in support of the application failed to establish the necessary probable cause. "[T]he magistrate [must have] a substantial basis to conclude that a crime [was] committed . . . and that the items described in the warrant were related to the criminal activity and probably in the place to be searched" (citation omitted). O'Day, 440 Mass. at 298. The warrant affidavit established probable cause that drug transactions occurred, and that drug dealers often use safes to hide contraband such as narcotics, firearms, and money. However, it did not adequately connect the

---

[3] To the extent that Commonwealth v. Demirtshyan, 87 Mass. App. Ct. 737 (2015), states otherwise, it is incorrect.

drug dealing, or any other criminal activity, to the safe in the motor vehicle that the defendant was driving.

The affidavit does not make clear whom the police were targeting. As a warrant application must draw a nexus between the area to be searched and criminal activity -- not a particular person -- it is not necessary for the application to identify a suspect. See, e.g., Commonwealth v. Martinez, 476 Mass. 410, 416-417 (2017) (probable cause analysis focused on nexus between suspected child pornography crimes and certain computers, not certain users). Here, however, in an attempt to create a basis for probable cause, the affidavit seems to conflate observations of the suspected dealer with observations of the defendant as though the two were one individual. An examination of the actions of and circumstances surrounding each individual is in order.

First, although there clearly was probable cause to believe that the first male observed was a drug dealer, the affidavit did not reveal a nexus between his activities and the safe. Despite the fact that the affidavit states that "drug dealers often keep contraband inside of safes to secure their drug supply," this particular safe was behind the driver's seat of a motor vehicle in which the drug dealer took a short trip just prior to the stop. The affidavit did not indicate whether the drug dealer had prior access to the motor vehicle, whether he

would have had physical access to the safe based on where he was sitting, or whether he would have had time to access the safe given the short period of time that he was in the vehicle.

Although the defendant, as the driver of the vehicle, has an arguable connection to the safe, there must be a nexus between the safe and criminal activity. The affidavit included no "specific allegations or particularized information based on police surveillance" that the defendant was a dealer. Commonwealth v. Pina, 453 Mass. 438, 442 (2009). Rather, the patfrisk of the defendant and sweep of the motor vehicle yielded hypodermic needles indicating drug use, not drug dealing. Cf. Commonwealth v. Wilson, 441 Mass. 390, 401 (2004) (intent to distribute marijuana supported by, inter alia, "absence of any smoking paraphernalia" undermined claim of possession for personal use). Further, neither the fact that a hand-to-hand drug transaction was conducted in the defendant's presence nor the fact that the defendant thereafter gave the drug dealer a ride permits an inference that the defendant was a participant in the drug dealer's distribution activities. Contrast Commonwealth v. Fernandez, 458 Mass. 137, 141 n.9 (2010) (search for evidence of drug dealing warranted where defendant seen personally conducting hand-to-hand drug transactions).

As there is no plausible nexus between the safe and drug dealing, we look to whether there is probable cause to believe

that there is a nexus between the safe and any other criminal activity.  As discussed supra, there was probable cause to believe that the defendant was a drug user, and the affiant averred that in his training and experience, heroin addicts may steal anything of value "to sell or trade the items to support" their habit.  Importantly, however, the affiant also stated that dealers, not addicts, tend to hide contraband in safes.  Because the affidavit made no connection between drug use and safes, there was no probable cause to believe that evidence of the defendant's drug use could be found in the safe.

Finally, the affidavit did provide probable cause to believe that there was a firearm in the safe.  However, the licensed possession of a firearm is not a crime, and on the facts here, there was no probable cause to believe that the defendant did not have a license to carry the weapon.  If anything, the fact that a handgun is properly secured in a gun safe makes it more likely that its owner has a license.  See Commonwealth v. Edwards, 476 Mass. 341, 346-347 & n.10 (2017).  The mere fact that the defendant may have been a heroin user does not give rise to the inference that the firearm was unlicensed.  See Commonwealth v. White, 374 Mass. 132, 141 (1977), aff'd (by an equally divided Court), 439 U.S. 280 (1978) (evidence of drug use does not furnish probable cause for additional criminality).  Further, "mere possession of a handgun

[is] not sufficient to give rise to a reasonable suspicion that the defendant was illegally carrying that gun." Commonwealth v. Couture, 407 Mass. 178, 183, cert. denied, 498 U.S. 951 (1990).

As the affidavit failed to provide a nexus between any suspected criminal activity and the safe, the warrant was invalid and the fruits of the search must be suppressed.

b. Motion to dismiss sentence enhancements.[4] The defendant also asks us to exercise our extraordinary powers pursuant to G. L. c. 211, § 3, to reverse the denial of his motion to dismiss the sentence enhancements.

The armed career criminal statute imposes enhanced penalties on a person convicted of possession of a firearm or ammunition where that person was previously convicted of two violent crimes or serious drug offenses. G. L. c. 269, § 10G (b). The two predicate crimes that the Commonwealth presented to the grand jury in this case were assault and battery by means of a dangerous weapon and robbery. The defendant argues that the Commonwealth failed to establish that his conviction of robbery was a conviction of a violent crime, and that therefore the sentence enhancements must be dismissed.

---

[4] Because we conclude that all of the evidence seized from the safe must be suppressed, for all practical purposes it would appear that the Commonwealth may be required to dismiss its case. Nevertheless, the single justice reserved and reported this issue because it is likely to continue arising in other cases and we reach it accordingly.

The Commonwealth argues that the fact that the defendant was convicted of robbery is enough to establish probable cause that he committed a violent crime.  We agree with the defendant.

The act uses the definition of "[v]iolent crime" found in G. L. c. 140, § 121:

> "any crime punishable by imprisonment for a term exceeding one year . . . that:  (i) has as an element the use, attempted use or threatened use of physical force or a deadly weapon against the person of another; (ii) is burglary, extortion, arson or kidnapping; (iii) involves the use of explosives; or (iv) otherwise involves conduct that presents a serious risk of physical injury to another."

See G. L. c. 269, § 10G (e).  Only the first part of this definition in G. L. c. 140, § 121, is relevant here.[5]  "Physical force" as used in that clause means "violent or substantial force capable of causing pain or injury."  Commonwealth v. Eberhart, 461 Mass. 809, 818 (2012), quoting Commonwealth v. Colon, 81 Mass. App. Ct. 8, 18 (2011).

Pursuant to G. L. c. 265, § 19 (b), the crime of robbery (i.e., unarmed robbery) is defined as follows:

> "Whoever, not being armed with a dangerous weapon, by force and violence, or by assault and putting in fear, robs, steals or takes from the person of another, or from his immediate control, money or other property which may be the subject of larceny, shall be punished by imprisonment in the state prison for life or for any term of years."

---

[5] Robbery is not one of the offenses enumerated in the second and third clauses of G. L. c. 140, § 121, and we recently determined that the fourth clause is unconstitutionally vague. Commonwealth v. Beal, 474 Mass. 341, 350-351 (2016).

Thus, one can commit a robbery either by "force and violence," or by "assault and putting in fear." Commonwealth v. Jones, 362 Mass. 83, 86 (1972), quoting G. L. c. 277, § 39. In both circumstances, "the degree of force is immaterial so long as it is sufficient to obtain the victim's property 'against his will'" (citation omitted). Jones, supra at 87. Importantly, the victim need not resist; as "long as the victim is aware of the application of force which relieves him of his property, . . . the requisite degree of force is present to make the crime robbery" (citation omitted). Id. at 89.

Even in a case where the robbery is committed by "force and violence," it is not necessary that the victim be placed in fear.[6] Thus, conduct that may be sufficient to meet the definition of robbery may not satisfy the definition of "violent crime" for purposes of a sentence enhancement under the act. See United States v. Parnell, 818 F.3d 974, 981 (9th Cir. 2016) (robbery is not "violent crime" in meaning of Federal armed

---

[6] For example, in Commonwealth v. Jones, 362 Mass. 83, 85 (1972), the defendant was convicted of robbing a woman who "described the taking as follows: 'I really couldn't tell you what he did. All I knew he was standing there. Next thing I knew, I felt something off my arm. I realized my bag was gone.'" This court upheld the conviction, holding that "although the action may be so swift as to leave the victim momentarily in a dazed condition, the requisite degree of force is present to make the crime robbery." Id. at 89.

career criminal statute, from which Massachusetts statute borrows its definition).

Because the crime of robbery can encompass conduct satisfying one of several definitions, not all of which are violent, to determine whether robbery is a violent crime for purposes of the act, the Commonwealth must provide not only the certified record of conviction but also evidence of the circumstances surrounding the robbery.[7]  See Eberhart, 461 Mass. at 816-817, citing Colon, 81 Mass. App. Ct. at 15.

Because the grand jury in this case heard only that the defendant had been convicted of robbery, without evidence that the defendant used, attempted to use, or threatened to use physical force, there was no reasonable basis to find probable cause that he had committed a "violent crime."  Commonwealth v. Hanright, 466 Mass. 303, 312 (2013) (evidence before grand jury must contain "reasonably trustworthy information . . . sufficient to warrant a prudent [person] in believing that the defendant had committed . . . an offense" [citation omitted]);

---

[7] As a practical matter, the necessary extrinsic evidence is slight.  The Commonwealth need only demonstrate which statutory or common-law definition was the basis of the prior conviction by, for example, presenting the police report or calling an officer to testify.  See Commonwealth v. Eberhart, 461 Mass. 809, 816 (2012), citing Commonwealth v. Colon, 81 Mass. App. Ct. 8, 16 n.8 (2011).

Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982). Thus, the sentence enhancements must be dismissed.

3. Conclusion. The matters are remanded to the county court. In No. SJ-2016-275, a judgment shall enter reversing the order of the Superior Court denying the defendant's motion to suppress evidence recovered pursuant to the search warrant. In No. SJ-2016-276, a judgment shall enter allowing the defendant's petition for relief under G. L. c. 211, § 3, and reversing the Superior Court order denying the defendant's motion to dismiss the armed career criminal portions of the indictments.

So ordered.