CYPHER, J.
**665 This case presents an opportunity to clarify the application of the Massachusetts armed career criminal act (ACCA), G. L. c. 269, § 10G. Specifically, we address whether the "modified categorical approach," as discussed in our recent cases, is the appropriate analytical framework, in certain statutes, when determining whether a predicate offense under the ACCA involved "force." The defendant, Ezara Wentworth, was indicted for a number of unlawful firearm offenses.[1] The indictments charging the firearm offenses also alleged that the defendant previously had been convicted of three violent crimes and thus was subject to enhanced penalties under the ACCA. After negotiations with the Commonwealth, the defendant pleaded guilty to carrying a loaded firearm unlawfully as an armed career criminal with one predicate offense.[2] See G. L. c. 269, § 10G (a).
*17 Following this court's decision in Commonwealth v. Beal, 474 Mass. 341, 52 N.E.3d 998 (2016), where we declared the residual clause of the ACCA unconstitutionally vague, the defendant filed a motion to vacate the ACCA conviction and sentence and for a new trial, which was denied. The defendant appealed from the denial, and we granted his application for direct appellate review. On appeal, he argues that (1) his indictment was defective and therefore void because it did not set forth the alleged ACCA predicate convictions; (2) none of his predicate offenses is a violent crime under the ACCA; (3) his plea counsel was ineffective; and (4) his guilty plea on the ACCA charge was not entered into intelligently and voluntarily.
We conclude that the defendant's indictment was not void because the indictment along with the grand jury minutes provided sufficient notice to the defendant of the crimes charged. We also conclude that the defendant's conviction of assault and battery was a conviction of a violent crime in these circumstances and **666 could serve as a predicate offense under the ACCA. Finally, we conclude that counsel was not ineffective and that the defendant's guilty plea was made intelligently and voluntarily. We affirm.[3]
1. Background. a. Arrest. We briefly discuss the facts, reserving more detail for later discussion. On February 13, 2011, responding to a report that several gunshots had been fired in the area, police encountered the defendant behind the wheel of a vehicle parked in the middle of the street. As police approached to question him, the defendant fled in his vehicle. Police pursued the defendant until he struck a parked vehicle, lost control of his vehicle, hit a snowbank, and came to a stop after hitting a utility pole. The defendant ran from the scene, but a police officer caught him. In the ensuing quarrel, the defendant struck an officer in the face. After the defendant's arrest, police found a loaded handgun in his vehicle.
b. Indictments and pleas. A grand jury returned ten indictments against the defendant, including two ACCA level three indictments: one premised on possession of the handgun found in the vehicle, and another premised on possession of the ammunition in the handgun found in the vehicle. The ammunition-related indictment alleged that the defendant "had previously been convicted of three violent crimes or three serious drug offenses ... or any combination thereof totaling one," and the firearm-related indictment alleged that he "had previously been convicted of three violent crimes or three serious drug offenses, or any combination totaling three or more." The indictments did not list any prior convictions, except that the firearm-related indictment also alleged that that charge was a second or subsequent offense based on the defendant's previous conviction of carrying a dangerous weapon. The grand jury heard an officer testify about the defendant's previous convictions of resisting arrest, assault and battery, and carrying a dangerous weapon.
The Commonwealth agreed to dismissal of the ammunition-related ACCA level three charge and to reducing the firearm-related *18 ACCA level three charge to a level one charge. In exchange, the defendant pleaded guilty to the majority of the charges, including **667 the ACCA level one charge. At the plea colloquy, the judge and the Commonwealth made it apparent that the defendant was pleading guilty to possession of a firearm with one prior ACCA conviction -- a domestic assault and battery from 2005. The prosecutor stated: "As to the predicate [ACCA] offense, [the defendant] was convicted in 2005 of a domestic assault and battery .... The allegations of that domestic for the [assault and battery] predicate, we have to show violence; that he ... struck his girlfriend at the time in the face and shoved her down on the bed." To follow up, the judge asked the defendant, "[D]id you hear everything that the prosecutor just told me? ... Are the facts as stated by the prosecutor correct?" The defendant answered, "Yes." Again, the judge ascertained from the defendant that he understood he was "being charged with a crime that involves an enhanced penalty or a more serious punishment," in this case, "a firearm as a career criminal, with a prior predicate offense." The judge warned the defendant that, by pleading guilty, he could face enhanced penalties in the future. The defendant acknowledged that he understood and pleaded guilty to the charges.
c. Motion to vacate the conviction and sentence and for a new trial. After we declared that the residual clause of the ACCA was unconstitutional in Beal, the defendant filed a motion to vacate the ACCA conviction and sentence and for a new trial. The defendant's motion was denied without a hearing. The motion judge, who was also the plea judge, concluded that the defendant's guilty plea was made knowingly and voluntarily; that the predicate conviction of assault and battery was unquestionably violent; and that, by pleading guilty, the defendant waived any challenge to the grand jury proceedings.
2. Standard of review. A judge may grant a motion for a new trial if it appears that justice may not have been done. Commonwealth v. Duart, 477 Mass. 630, 634, 82 N.E.3d 1002 (2017), cert. denied, --- U.S. ----, 138 S. Ct. 1561, 200 L.Ed.2d 755 (2018). The decision to deny such a motion lies within the sound discretion of the judge and will not be reversed unless it is manifestly unjust or unless the trial was infected with prejudicial constitutional error. Commonwealth v. Nieves, 429 Mass. 763, 770, 711 N.E.2d 571 (1999). Therefore, we review the denial of a motion for a new trial for a significant error of law or other abuse of discretion. Duart, supra. We give special deference to the decision of a judge who was, as here, the plea judge. See Commonwealth v. Martin, 467 Mass. 291, 316, 4 N.E.3d 1236 (2014).
3. Discussion. a. Indictment. As an initial matter, the defendant argues that the ACCA indictment and subsequent plea are void **668 because the indictment itself did not set forth any prior violent crimes or serious drug offenses. The Commonwealth argues that the defendant was provided sufficient notice of the crime and enhanced sentence in the indictment. Additionally, the Commonwealth contends that at no time did the defendant seek a bill of particulars, per Mass. R. Crim. P. 13 (b) (1), as appearing in 442 Mass. 1516 (2004), nor did he indicate at the plea colloquy that the indictment was void or defective.
Article 12 of the Massachusetts Declaration of Rights provides: "No subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him ...." " '[F]air notice of the charges is a touchstone' of due process under art. 12" (citation omitted).
*19 Commonwealth v. Canty, 466 Mass. 535, 547, 998 N.E.2d 322 (2013). Rule 4 (a) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 849 (1979), sets out the necessary components of an indictment, including "a plain, concise description of the act which constitutes the crime or an appropriate legal term descriptive thereof." "A complaint or indictment will not be dismissed ... 'if the offense is charged with sufficient clarity to show a violation of law and to permit the defendant to know the nature of the accusation against him.' " Canty, supra, quoting Commonwealth v. Fernandes, 430 Mass. 517, 519-520, 722 N.E.2d 406 (1999), cert denied sub nom. Martinez v. Massachusetts, 530 U.S. 1281, 120 S.Ct. 2755, 147 L.Ed.2d 1017 (2000). Moreover, "[a]n indictment shall not be dismissed or be considered defective or insufficient if it is sufficient to enable the defendant to understand the charge and to prepare his defense; nor shall it be considered defective or insufficient for lack of any description or information which might be obtained by requiring a bill of particulars." G. L. c. 277, § 34.
Here, the indictment was not defective. The indictment stated that the defendant was charged with unlawful possession of a firearm, G. L. c. 269, § 10 (a ), and that he "had previously been convicted of three violent crimes or three serious drug offenses, or any combination totaling three or more, making [him] subject to the penalty provisions of [ G. L. c. 269, § 10G (c ) ]." The indictment sufficiently stated the charge against the defendant and the sentence enhancement, tracking the language of the statute, and provided notice that the enhanced sentence relied on the three predicate offenses. Notably, the ACCA does not identify a "freestanding crime"; rather, it provides sentence enhancements, based on prior offenses, for violations of § 10. See G. L. c. 269, § 10G (c ). See also Fernandes, 430 Mass. at 520-521, 722 N.E.2d 406, quoting **669 Bynum v. Commonwealth, 429 Mass. 705, 708-709, 711 N.E.2d 138 (1999) ("The prior offense is not an element of the crime for which a defendant is charged but concerns the punishment to be imposed if he is convicted ...").
Further, had the defendant not understood the charge, "he could have moved for a bill of particulars under Mass. R. Crim. P. 13 (b) (1) ... or moved to dismiss the indictment under G. L. c. 277, § 47A." Canty, 466 Mass. at 548, 998 N.E.2d 322. Although the defendant can raise at any time an "objection based upon a failure to show jurisdiction ... or the failure to charge an offense," per G. L. c. 277, § 47A, the indictment did not fail to charge the defendant with a crime. That the indictment failed to list the three predicate offenses relied upon does not render it defective, as the defendant was provided fair notice of the charge and the accompanying sentence enhancement based upon three previous convictions of violent crimes or serious drug offenses.
The defendant cites Commonwealth v. Pagan, 445 Mass. 161, 169, 834 N.E.2d 240 (2005), to argue that "the predicate offense must be alleged in the ... indictment." See Commonwealth v. Harrington, 130 Mass. 35, 36 (1880) ("the offence ... is not fully and substantially described to the defendant, if the complaint fails to set forth the former convictions which are essential features of it"). Unlike in Pagan and Harrington, where the indictments failed entirely to set forth that they were based on prior convictions, this ACCA indictment stated that it was based on three predicate charges. See Fernandes, 430 Mass. at 522, 722 N.E.2d 406 ("Article 12 requires some statement regarding the prior conviction before a defendant can be subjected to an enhanced penalty"). The transcript from the grand jury minutes provided to the defendant and the plea *20 colloquy demonstrate that the defendant was on notice and sufficiently understood, and accepted as fact, the predicate convictions on which the indictment was based. During the plea hearing, the prosecutor read into the record that the ACCA indictment was based on a 2005 assault and battery where the defendant "struck his girlfriend at the time in the face and shoved her down on the bed." The judge asked the defendant whether he understood what the prosecutor was alleging, and the defendant answered that he did. See Canty, 466 Mass. at 549, 998 N.E.2d 322 ("it is clear from the plea colloquy that the defendant admitted to the missing element of the ... indictment by admitting to the prosecutor's statement of facts"). The judge also repeatedly confirmed with the defendant and defense counsel that they had spoken and that the defendant **670 understood the charges against him. Although the better practice is for the ACCA indictment to specify at least the date of the prior offense, the date of the conviction, and the court in which such a conviction was obtained, see Fernandes, supra at 523, 722 N.E.2d 406, all things considered, the defendant was on notice of the crimes with which he was charged. Henderson v. Morgan, 426 U.S. 637, 645, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), quoting Smith v. O'Grady, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859 (1941) (defendant must have "real notice of the true nature of the charge against him"). See Commonwealth v. Colantoni, 396 Mass. 672, 679, 488 N.E.2d 394 (1986).
b. Assault and battery as "violent crime." The defendant pleaded guilty to an ACCA level one offense with assault and battery as the predicate. G. L. c. 269, § 10G (a ). He argues that even if his ACCA indictment were valid, his prior convictions of assault and battery, resisting arrest, and carrying a dangerous weapon do not qualify as predicate offenses under either the "force clause" or the "residual clause" of the ACCA. He contends that the invalidated "residual clause" of the ACCA cannot be applied retroactively. Furthermore, he claims that the "force clause" of the ACCA demands a strictly categorical, elements-focused approach, which prohibits inquiry into the factual means underlying the prior conviction. That is, by pleading guilty to assault and battery, he did not necessarily admit to committing a battery involving "force."
We begin by discussing how we have interpreted predicate offenses under the ACCA. The ACCA provides a staircase of mandatory minimum and maximum enhanced punishments for certain weapons-related offenses if a defendant has been previously convicted of a "violent crime" or a serious drug offense. See G. L. c. 269, § 10G (a ). For example, a defendant convicted of a first offense of unlawful possession of firearm under G. L. c. 269, § 10 (h ), faces a maximum penalty of two years in a house of correction and no mandatory minimum sentence. The same offense committed after a person incurs a prior conviction under the ACCA carries a three-year mandatory minimum sentence in State prison and up to fifteen years in State prison. See G. L. c. 269, § 10G (a ). The mandatory minimum rises with each prior conviction under the ACCA: two prior convictions mandate a sentence of from ten to fifteen years in State prison, G. L. c. 269, § 10G (b ) ; three prior convictions mandate a sentence of from fifteen to twenty years in State prison. G. L. c. 269, § 10G (c ).
Under the ACCA, a "violent crime" is
**671 "any crime punishable by imprisonment for a term exceeding one year ... that: (i) has as an element the use, attempted use or threatened use of physical force or a deadly weapon against the person *21 of another; (ii) is burglary, extortion, arson or kidnapping; (iii) involves the use of explosives; or (iv) otherwise involves conduct that presents a serious risk of physical injury to another."
G. L. c. 140, § 121. See G. L. c. 269, § 10G (e ). In Beal, 474 Mass. at 351, 52 N.E.3d 998, we held that the fourth clause of the definition of a violent crime, the "residual" clause, is unconstitutionally vague. Accordingly, to constitute a violent crime under the ACCA, the crime must fall within the scope of either the "force" clause or the enumerated crimes provisions. Id. at 349, 52 N.E.3d 998. Only the "force" clause is in play in the present case.
Historically, we have used two approaches to determine whether a prior conviction is applicable conduct that falls under the ACCA. The first approach, the "categorical approach," generally requires a court to look only to the fact of conviction and the statutory definition of the prior offense. Commonwealth v. Colon, 81 Mass. App. Ct. 8, 15, 958 N.E.2d 56 (2011). This approach has been applied when interpreting the "serious drug offense" prong of the ACCA. See Commonwealth v. Ware, 75 Mass. App. Ct. 220, 223, 913 N.E.2d 869 (2009), and cases cited.
In other cases, we have applied the categorical approach when determining whether a defendant has allegedly committed an offense that subjects him or her to pretrial detention for dangerousness, G. L. c. 276, § 58A.[4] See Scione v. Commonwealth, 481 Mass. 225, 228, 114 N.E.3d 74 (2019) ("we take a categorical approach, that is, we look at the elements of the offense, rather than the facts of or circumstances surrounding the alleged conduct"); Commonwealth v. Young, 453 Mass. 707, 711-716, 905 N.E.2d 90 (2009).
In Commonwealth. v. Eberhart, 461 Mass. 809, 814, 965 N.E.2d 791 (2012), we first considered how we analyze prior convictions where the conviction was under a broad statute, that is, a statute in which different types of conduct -- not all being violent -- can result in a conviction. There, a defendant argued that a certified conviction **672 of assault and battery did not suffice, by itself, to prove that his prior conviction was for a "violent crime" under the ACCA. We began by analyzing the common-law crime of assault and battery. We stated that under the common law there are two theories of assault and battery: intentional battery and reckless battery. Id. at 818 & n.13, 965 N.E.2d 791. Offensive battery and harmful battery are forms of intentional battery. Id. at 818, 965 N.E.2d 791. A harmful battery is "[a]ny touching with such violence that bodily harm is likely to result" (quotation and citation omitted). Id. An offensive battery occurs when "the defendant, without justification or excuse, intentionally touched the victim, and ... the touching, however slight, occurred without the victim's consent" (citation omitted). Id. We concluded that the "physical force" required to make an offense a "violent crime" must be violent force, and that because a conviction of assault and battery, as appearing on a certified conviction, may rest on a nonviolent "touching, however slight," the defendant's certified conviction alone did not suffice to show that he had been convicted of a "violent crime." Id. at 818-819, 965 N.E.2d 791.
We noted that the straightforward categorical approach applies to predicate *22 offenses under the ACCA when the statutory definition of the prior offense unambiguously qualifies that offense as a predicate conviction.[5] However, we stated that "[t]he categorical approach does not always produce a conclusive determination whether the defendant has been convicted of a 'violent crime.' " Eberhart, 461 Mass. at 816, 965 N.E.2d 791. In some cases, where the defendant's predicate conviction is based on a "broad statute that encompasses multiple crimes, not all of which are 'violent crimes,' " we employ a "modified categorical approach." Id. Under this approach, the jury at an ACCA enhancement trial are permitted to consider additional evidence, after a judge determines that it is admissible, to determine whether a predicate conviction is a "violent crime" under the force clause. Id. at 817, 965 N.E.2d 791. Using the modified categorical approach, for a predicate conviction to count against the defendant, the jury must conclude beyond a reasonable doubt that the conviction involved violence. Id.
Since our decision in Eberhart, we twice have stated that at an ACCA subsequent enhancement trial, the Commonwealth may be able to show that a crime was "violent" even if the elements of the crime alone do not show that it was violent. In **673 Beal, 474 Mass. at 351, 52 N.E.3d 998, the defendant was convicted of numerous firearm offenses. In his subsequent ACCA enhancement trial, the Commonwealth entered in evidence certified copies of previous convictions of assault and battery and assault and battery on a public employee. Much like in Eberhart, we held that because neither of his previous convictions was a categorically violent crime, the certified copies of the convictions alone were not enough to sustain the Commonwealth's burden of proving a violent crime under the force clause. Id. at 352-353, 52 N.E.3d 998. We once again restated that the use of the modified categorical approach is appropriate in circumstances where the predicate conviction falls under a broad statute, like assault and battery. Id. at 351, 52 N.E.3d 998. We also confirmed that harmful battery and reckless battery each qualify as a "violent crime" under the force clause because each "has as an element the use, attempted use or threatened use of physical force." Id. at 351-352, 52 N.E.3d 998, quoting G. L. c. 140, § 121. Therefore, assault and battery necessitates a modified categorical approach to determine whether the committed offense was "violent" within the meaning of the ACCA. Id. at 352, 52 N.E.3d 998.
A year later, in Commonwealth v. Mora, 477 Mass. 399, 406, 77 N.E.3d 298 (2017), we were asked to decide whether a certified conviction of unarmed robbery alone provided probable cause that the defendant had committed a "violent crime." Again, we held that because a robbery conviction may be returned without proof of violent physical force, the certified conviction by itself did not show that the defendant was convicted of a "violent crime." Id. at 407-408, 77 N.E.3d 298. And once again, we recognized that "[b]ecause the crime of robbery can encompass conduct satisfying one of several definitions, not all of which are violent, to determine whether robbery is a violent crime for purposes of the act, the Commonwealth must provide not only the certified record of conviction but also evidence of the circumstances *23 surrounding the robbery." Id. at 408, 77 N.E.3d 298.
Applying our guidance from Eberhart, Beal, and Mora, it is apparent that the assault and battery to which the defendant pleaded guilty in this case involved "violence." As part of a favorable deal from the Commonwealth, the defendant pleaded guilty as a ACCA level one offender with a 2005 domestic assault and battery as the predicate offense. He therefore waived any claim to the lack of sufficient evidence that he committed a "violent" crime. See Commonwealth v. Cabrera, 449 Mass. 825, 831, 874 N.E.2d 654 (2007) ("By pleading guilty, the defendant gave up his right **674 to pursue a challenge to [the sufficiency of the evidence], and therefore his plea generated a judgment that is final ..."). During the plea colloquy, the prosecutor stated: "As to the predicate [ACCA] offense, [the defendant] was convicted in 2005 of a domestic assault and battery ...." The prosecutor acknowledged that the Commonwealth had to show "violence." To do so, the prosecutor elaborated that the facts of the domestic assault and battery were that the defendant "struck his girlfriend at the time in the face and shoved her down on the bed." The defendant agreed to the facts presented by the prosecutor. This evidence is sufficient "evidence of the circumstances surrounding" the assault and battery to demonstrate a touching with such violence that bodily harm is likely to result -- i.e., a harmful battery. See Mora, 477 Mass. at 408, 77 N.E.3d 298.
Nonetheless, the defendant contends that the United States Supreme Court's decisions in Mathis v. United States, --- U.S. ----, 136 S. Ct. 2243, 2251, 195 L.Ed.2d 604 (2016), and Descamps v. United States, 570 U.S. 254, 263-264, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013), overrule our cases and compel us to use an elements-based approach in determining whether a predicate offense constitutes one of force.[6] We disagree with this *24 contention **675 for primarily two reasons.[7] First, under Federal law, a judge, not a jury, determines whether a defendant's prior offenses are considered predicate felonies under the Federal ACCA. See Eberhart, 461 Mass. at 816, 965 N.E.2d 791. The Supreme Court's rationale for the Federal categorical approach is based on concerns arising under the Sixth Amendment to the United States Constitution from "sentencing courts' making findings of fact that properly belong to juries." Descamps, supra at 267, 133 S.Ct. 2276. See United States v. Bain, 874 F.3d 1, 29 (1st Cir. 2017), cert. denied, --- U.S. ----, 138 S. Ct. 1593, 200 L.Ed.2d 780 (2018). Sixth Amendment concerns that compel the judicial use of the categorical approach are not present here because, in Massachusetts, a defendant is entitled to a jury trial to determine whether a sentence enhancement under the ACCA is applicable.[8] See Beal, 474 Mass. at 351, 52 N.E.3d 998 ; Eberhart, supra. See also G. L. c. 278, § 11A. In this case, the defendant had the right to a jury trial for his ACCA enhancement, but pleaded guilty. Had the defendant gone to trial on the ACCA enhancement charges, the Commonwealth would have had the same burden of proof as it would have had at a regular trial -- to prove beyond a reasonable doubt that the previous crime of which the defendant was convicted was a **676 violent crime. Beal, supra. As the Court explained in Descamps, the categorical approach is essential in the context of a sentencing enhancement in order to ensure that a defendant's punishment is not increased on the basis of facts that were not found by a jury. See Descamps, supra at 269-270, 133 S.Ct. 2276. And "the only facts the court can be sure the jury so found are those constituting elements of the offense -- as distinct from amplifying but legally extraneous circumstances." Id.
Although the Supreme Court's discussion of Sixth Amendment principles pointedly reveals the limits of a judge's authority to make the findings necessary to characterize a prior conviction as a crime involving "violence," we are not faced with the same concern that a judge will have unfettered discretion in making that determination. Because we may establish the applicability of the Massachusetts ACCA by using witness testimony and a wider range of documentary evidence than is available in the Federal courts, we ensure the same procedural protections at the *25 ACCA enhancement trial as we do at a regular trial. Colon, 81 Mass. App. Ct. at 14-15, 958 N.E.2d 56.
Second, another of the Supreme Court's justifications for the categorical approach is that it serves practical purposes: it promotes judicial and administrative efficiency by precluding the relitigation of past convictions and minitrials conducted long after the fact. See Moncrieffe v. Holder, 569 U.S. 184, 200-201, 133 S.Ct. 1678, 185 L.Ed.2d 727 (2013). Judicial efficiency does not raise the same level of concern in cases involving the Massachusetts ACCA, because, as previously stated, the defendant has a constitutional right to a jury trial for any sentencing enhancement. See G. L. c. 278, § 11A.
In sum, the interest of judicial economy and the concern of sentencing judges making improper findings of fact, although substantial in Federal courts, are not persuasive reasons to overrule the use of our modified categorical approach. We reiterate that at the subsequent offender trial, "the Commonwealth need not retry the prior conviction ...; the Commonwealth need only prove which statutory or common-law definition was the basis of the prior conviction." See Eberhart, 461 Mass. at 816, 965 N.E.2d 791, quoting Colon, 81 Mass. App. Ct. at 16 n.8, 958 N.E.2d 56. Under the modified categorical approach we restate today, a certified record of conviction referencing a particular statute may prove that the defendant committed a violent crime only where all crimes encompassed within that statute are violent crimes. Eberhart, supra at 817, 965 N.E.2d 791. Our modified categorical approach is still appropriate in circumstances **677 where the defendant is convicted under a broad statute. Here, the facts to which the defendant pleaded guilty involved a violent harmful battery sufficient to satisfy the force clause.[9]
c. Ineffective assistance of counsel. The defendant argues that, if assault and battery is a "violent crime" under the ACCA, he should be allowed to withdraw his ACCA guilty plea on the ground of ineffective assistance of counsel. He contends that defense counsel's failure to challenge the ACCA indictment was unreasonable, because the grand jury heard insufficient evidence from which to conclude that the defendant's alleged assault and battery qualified as a "violent crime" and because the grand jury did not even see a certified record of conviction to support the predicate offenses. He further contends that he would not have pleaded on the ACCA indictment had his counsel moved to dismiss the charges. Relatedly, he argues that he did not enter into his plea agreement intelligently and voluntarily.
To establish ineffective assistance of counsel, the defendant bears the burden of showing "that there has been a 'serious incompetency, inefficiency, or inattention of counsel - - behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer,' and that counsel's poor performance 'likely deprived the defendant of an otherwise available, substantial ground of defence.' " Commonwealth v. Simon, 481 Mass. 861, 866, 120 N.E.3d 679 (2019), quoting Commonwealth v. Millien, 474 Mass. 417, 429-430, 50 N.E.3d 808 (2016). See Commonwealth v. Saferian, 366 Mass. 89, 96, 315 N.E.2d 878 (1974). We apply this two-prong test when evaluating the defendant's request to withdraw a guilty plea on the basis of ineffective assistance *26 of counsel. Commonwealth v. Lastowski, 478 Mass. 572, 575-576, 88 N.E.3d 263 (2018). In reviewing an attorney's conduct, "a discerning examination and appraisal of the specific circumstances of the given case" is necessary. Saferian, supra.
First, insofar as the defendant's argument is premised on assault and battery not being a "violent crime" under the ACCA, our analysis supra forecloses this argument. Additionally, although the ACCA indictment fails to list the predicate offenses and the release of our decision in Eberhart may have presented defense counsel with an opportunity to move to dismiss the ACCA indictment, the defendant presents no evidence to suggest **678 that the decision not to make such a motion was indicative of "serious incompetency, inefficiency, or inattention of counsel." Saferian, 366 Mass. at 96, 315 N.E.2d 878. Defense counsel's decision not to move to dismiss the indictment could be considered a reasonable tactical or strategic decision as, even if counsel had successfully dismissed some or all of the indictment, had it been dismissed without prejudice, the Commonwealth would have been able to indict the defendant again under the ACCA, correcting any errors. See Bridgeman v. District Attorney for the Suffolk Dist., 476 Mass. 298, 316, 67 N.E.3d 673 (2017), quoting Commonwealth v. Cronk, 396 Mass. 194, 200, 484 N.E.2d 1330 (1985) ("Dismissal with prejudice is 'too drastic a remedy' if the error can be remedied and the defendant can still obtain a fair trial"); Commonwealth v. Vieux, 41 Mass. App. Ct. 526, 527, 671 N.E.2d 989 (1996) ("failing to pursue a futile tactic does not amount to constitutional ineffectiveness"). In that scenario, the defendant potentially could have faced trial on an ACCA level three charge, which carries with it a mandatory minimum sentence of fifteen years in State prison.
"Where, as here, the defendant's ineffective assistance of counsel claim is based on a tactical or strategic decision, the test is whether the decision was 'manifestly unreasonable' when made." Commonwealth v. Kolenovic, 471 Mass. 664, 674, 32 N.E.3d 302 (2015), S.C., 478 Mass. 189, 84 N.E.3d 781 (2017), quoting Commonwealth v. Acevedo, 446 Mass. 435, 442, 845 N.E.2d 274 (2006). This test is "essentially a search for rationality," Kolenovic, supra, and we "do not 'second guess competent lawyers,' " Commonwealth v. McCray, 457 Mass. 544, 557, 931 N.E.2d 443 (2010), quoting Commonwealth v. LaCava, 438 Mass. 708, 713, 783 N.E.2d 812 (2003). Defense counsel's decision to negotiate a plea of guilty with the Commonwealth rather than filing a motion to dismiss was not manifestly unreasonable. On the contrary, defense counsel demonstrated skill in mitigating the impact of the ACCA indictment. Defense counsel successfully negotiated a plea deal with the Commonwealth that resulted in dismissal of one level three charge and that dropped the other charge from a level three offense, which provides for a mandatory minimum of fifteen years and up to twenty years, to a level one offense, which has a mandatory minimum of three years and a maximum of fifteen years. See G. L. c. 269, § 10G (a ), (c ). Not only was counsel able to negotiate the level of the offense, he also secured a lower agreed-upon sentence of only from three to seven years of incarceration -- a significant difference from a mandatory minimum of fifteen years.
**679 Because we find that defense counsel's actions did not fall below the performance prong of Saferian, we need not look to the second prong. See Kolenovic, 471 Mass. at 673, 32 N.E.3d 302 ("Although a claim of ineffective assistance of counsel may not prevail unless counsel's performance affects the fairness of the trial, we need not *27 reach that analysis if we determine that counsel's representation did not fall measurably below that which might be expected from an ordinary fallible lawyer").
The defendant contends that because he had grounds to seek dismissal of the ACCA indictment and because defense counsel misinformed him that his past crimes were "violent crimes" under the ACCA, his guilty plea was not made intelligently. "Due process requires that a plea of guilty be accepted only where 'the contemporaneous record contains an affirmative showing that the defendant's plea was intelligently and voluntarily made.' " Commonwealth v. Scott, 467 Mass. 336, 345, 5 N.E.3d 530 (2014), quoting Commonwealth v. Furr, 454 Mass. 101, 106, 907 N.E.2d 664 (2009). See Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). "A guilty plea is intelligent if it is tendered with knowledge of the elements of the charges against the defendant and the procedural protections waived by entry of a guilty plea. A guilty plea is voluntary so long as it is tendered free from coercion, duress, or improper inducements" (citation omitted). Scott, supra.
We conclude that the defendant's plea was made intelligently and voluntarily. The lengthy and detailed plea colloquy shows that the plea judge reviewed the waiver of rights, the charges, and the terms of the plea deal with the defendant. A plea is made intelligently if (1) "the judge explain[s] to the defendant the elements of the crime"; (2) counsel "represent[s] that [he] has explained to the defendant the elements he admits by his plea"; or (3) the defendant admits to "facts recited during the colloquy which constitute the unexplained elements." See Furr, 454 Mass. at 107, 907 N.E.2d 664, quoting Commonwealth v. Correa, 43 Mass. App. Ct. 714, 717, 686 N.E.2d 213 (1997). Here, the judge confirmed with the defendant that he understood and voluntarily signed the waiver of rights. See Furr, supra at 109, 907 N.E.2d 664 ("the defendant's signed waiver may properly be considered as part of the plea record to support a finding that the plea was made intelligently"). Moreover, the judge confirmed with the defendant that he had the opportunity to discuss the plea with his counsel. Defense counsel stated that he discussed with the defendant the nature of the charges, including all the elements that must be proved and possible defenses and challenges the **680 defendant could bring at trial. The defendant admitted to the facts of the firearm offense and the predicate assault and battery offense that the prosecutor recited.
The judge addressed the defendant's age, education level, language, and literacy, and before determining whether the defendant was entering into the agreement intelligently, the judge assured himself that the defendant was not being treated for mental illness and was not under the influence of medication, drugs, or alcohol. In ascertaining whether the defendant was entering his plea voluntarily, the judge encouraged the defendant to ask questions and speak to his attorney at any time, and the judge confirmed with the defendant that he was not involuntarily entering into the plea. Although the defendant noted that he felt pressure from the charges, he explained to the judge nonetheless, "I feel like that's my best decision." See Commonwealth v. Berrios, 447 Mass. 701, 708, 856 N.E.2d 857 (2006), cert. denied, 550 U.S. 907, 127 S.Ct. 2103, 167 L.Ed.2d 819 (2007) ("the stress inherent in entering guilty pleas, such as the concern of possibly receiving a harsher sentence if a defendant is tried and found guilty, and pressure from family members and from counsel, do not necessarily render pleas involuntary").
*28 To the extent that the defendant argues that he was compelled to plea because he was misinformed by counsel as to the nature of his prior offenses qualifying as "violent crimes" under the ACCA, we conclude that this is without merit for the reasons previously stated in this decision.
4. Conclusion. The order denying the defendant's motion to vacate the ACCA conviction and sentence and for a new trial is affirmed.
So ordered.
GANTS, C.J. (dissenting, with whom Lenk, J., joins).
Under G. L. c. 269, § 10G (a ), the Massachusetts armed career criminal act, a person previously convicted of a "violent crime," who is subsequently convicted of certain firearms offenses, is subject to a mandatory minimum sentence of three years in prison. Here, the alleged prior conviction of a "violent crime" was an assault and battery. In Commonwealth v. Eberhart, 461 Mass. 809, 819, 965 N.E.2d 791 (2012), we declared that where the predicate offense is assault and battery, the Commonwealth must prove beyond a reasonable doubt that the assault and battery was a harmful or reckless battery, and was not an offensive battery, because only a harmful **681 or reckless battery "has as an element the use, attempted use or threatened use of physical force ... against the person of another." G. L. c. 140, § 121. Where there is a reasonable doubt whether the battery could be categorized as an offensive battery, as there was in Eberhart, supra at 819-820, 965 N.E.2d 791, the Commonwealth has failed to meet this burden.
A harmful battery is "[a]ny touching 'with such violence that bodily harm is likely to result.' " Id. at 818, 965 N.E.2d 791, quoting Commonwealth v. Burke, 390 Mass. 480, 482, 457 N.E.2d 622 (1983). In contrast, an offensive battery "occurs when 'the defendant, without justification or excuse, intentionally touched the victim, and ... the touching, however slight, occurred without the victim's consent.' " Eberhart, supra, quoting Commonwealth v. Hartnett, 72 Mass. App. Ct. 467, 476, 892 N.E.2d 805 (2008).
Here, all that we know about this predicate assault and battery is what was described by the prosecutor at the plea hearing for the subsequent firearms offense and admitted to by the defendant -- that the defendant "struck his girlfriend at the time in the face and shoved her down on the bed." The court concludes that "[t]his evidence is sufficient 'evidence of the circumstances surrounding' the assault and battery to demonstrate a touching with such violence that bodily harm is likely to result -- i.e., a harmful battery." Ante at 674, 128 N.E.3d 14, quoting Commonwealth v. Mora, 477 Mass. 399, 408, 77 N.E.3d 298 (2017). I disagree.
These actions, as described, unquestionably indicate an offensive, intentional, and unwanted touching. But we simply cannot know beyond a reasonable doubt from so little information whether the earlier assault and battery was committed with "such violence that bodily harm is likely to result."[1] We know nothing about the type *29 of force used when the defendant struck his girlfriend -- whether it was a punch, a slap, or some other type of contact. Nor do we know anything about the intensity of the force used, either in striking her or in shoving her down on the bed. Consequently, we cannot determine from this bare description **682 whether bodily harm was likely to result from the defendant's use of force, such that this offense must be categorized as a harmful battery rather than an offensive battery. Under the prosecutor's spare description of the offense, it could be either a harmful or an offensive battery. See Commonwealth v. Travis, 408 Mass. 1, 8, 556 N.E.2d 378 (1990), citing Burke, 390 Mass. at 482-483, 457 N.E.2d 622 (describing "[o]ffensive physical contact" for purpose of battery conviction as "a push or a binding of hands, undertaken without consent" [emphasis added] ); Commonwealth v. Cohen, 55 Mass. App. Ct. 358, 359, 771 N.E.2d 176 (2002), quoting Commonwealth v. Dixon, 34 Mass. App. Ct. 653, 654, 614 N.E.2d 1027 (1993) ("The offensive touching may be direct, as by striking another, or it may be indirect, as by setting in motion some force or instrumentality with the intent to cause injury" [emphasis added] ). See also Parreira v. Commonwealth, 462 Mass. 667, 668, 672, 971 N.E.2d 242 (2012) (defendant "physically mov[ing]" victim into bathroom was offensive battery); Commonwealth v. Geordi G., 94 Mass. App. Ct. 82, 85, 111 N.E.3d 1102 (2018) (juvenile pushing teacher after arguing with her established probable cause that offensive battery occurred).
Indeed, if that was the only evidence presented at a trial for assault and battery, and if that evidence were deemed sufficient to support a jury instruction for harmful battery, the Commonwealth would be entitled to jury instructions regarding both harmful battery and offensive battery, and the jury could convict the defendant of assault and battery if some jurors found that the defendant was guilty of harmful battery and others thought that the defendant was guilty of offensive battery. See Commonwealth v. Mistretta, 84 Mass. App. Ct. 906, 907, 995 N.E.2d 814 (2013) ; Instruction 6.140 of the Criminal Model Jury Instructions for Use in the District Court (2016) (assault and battery). Where a jury could be charged on both common-law definitions of the crime, we cannot say with so little evidence that the Commonwealth met its burden of proving beyond a reasonable doubt that the predicate offense was a harmful battery and not an offensive battery.
The court recognizes that, under our modified categorical approach, the Commonwealth must prove beyond a reasonable doubt "which statutory or common-law definition was the basis of the prior conviction." Ante at 676, 128 N.E.3d 14, quoting Eberhart, 461 Mass. at 816, 965 N.E.2d 791. Because I disagree with the court's conclusion that the prosecutor's description of the predicate assault and battery suffices to prove beyond a reasonable doubt that it was a harmful battery and not an offensive battery, I dissent.

A grand jury returned additional indictments against the defendant: assault and battery on a police officer; vandalizing property; negligent operation of a motor vehicle; operating a motor vehicle with a suspended license; failure to stop for police; and resisting arrest.

The defendant also pleaded guilty to assault and battery on a police officer, possessing a firearm with a defaced serial number, vandalizing property, negligent operation of a motor vehicle, operating a motor vehicle with a suspended license, and resisting arrest.

The Commonwealth argues that "several" issues on appeal are not properly before this court because they were not raised below. However, all four issues on appeal are present in the defendant's pro se motion to vacate the charges brought under the Massachusetts armed career criminal act (ACCA), G. L. c. 269, § 10G, and for a new trial. Therefore, all issues on appeal are properly before this court.

We note that although we have applied a strictly elements-based approach for dangerousness hearings, those hearings are pretrial determinations conducted by a judge in the Superior Court. Unlike sentencing enhancement trials, a defendant does not have the right to a trial by jury to determine whether he or she is dangerous under G. L. c. 276, § 58A.

For example, G. L. c. 265, § 22 (rape), states: "Whoever has sexual intercourse or unnatural sexual intercourse with a person, and compels such person to submit by force and against his will ..." (emphasis added).

In Mathis v. United States, --- U.S. ----, 136 S. Ct. 2243, 2251, 195 L.Ed.2d 604 (2016), the United States Supreme Court considered Iowa's burglary statute, which forbids entering "an occupied structure" without permission with the intent to commit a felony. Iowa Code § 713.1. "Occupied structure" is defined, for purposes of this statute, as "any building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value." Iowa Code § 702.12. The Supreme Court first explained that the Iowa statute is broader than "generic burglary," which is an enumerated violent felony under the Federal armed career criminal act, 18 U.S.C. § 924(e)(2)(B)(ii). See Mathis, supra at 2248, 2250-2251. The Court next considered how Iowa courts interpret this statute and determined that the different locations are not alternative elements creating separate crimes but, instead, are simply alternative means of violating a single locational element. Id. at 2250-2251, 2255-2256. The Court concluded that the District Court's reliance on a conviction of burglary under Iowa law could not be saved by the "categorical approach" -- i.e., looking to charging papers and considering whether the defendant actually burglarized a building or dwelling. Id. at 2257. See Dawkins v. United States, 829 F.3d 549, 550 (7th Cir. 2016), citing Mathis, supra. The Court held that the statute is nondivisible and categorically not a violent felony. Dawkins, supra, citing Mathis, supra at 2248-2249, 2257-2258.
Under the Federal ACCA, sentencing judges use a "categorical approach" to determine whether a prior conviction qualifies as a predicate offense. See Mathis, 136 S. Ct. at 2251 ; Descamps v. United States, 570 U.S. 254, 257, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013). Courts "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic crime' -- i.e., the offense as commonly understood. The prior conviction qualifies as [a Federal] ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." Descamps, supra. Where the prior conviction was predicated on a "divisible" statute in which the elements of the offense were listed in the alternative, such that one alternative formed the basis of an ACCA predicate while another did not, a trial court could determine which set of elements formed the basis of the conviction by considering "a limited class of documents, such as indictments and jury instructions" in the record of conviction. Id. This "modified categorical approach" is not an exception to the categorical approach but, rather, a tool that "retain[ed] the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." Id. at 2285.

Under the Federal categorical approach, courts ask whether there is any realistic way of committing the crime that does not satisfy the force clause or the elements of the generic version of the enumerated offense. See Mathis, 136 S. Ct. at 2248 ; United States v. Bain, 874 F.3d 1, 29 (1st Cir. 2017), cert. denied, --- U.S. ----, 138 S. Ct. 1593, 200 L.Ed.2d 780 (2018).

At this subsequent offender jury trial, the trial judge may admit any evidence that would have been admissible at the original trial of the alleged predicate offense. Commonwealth v. Eberhart, 461 Mass. 809, 816, 965 N.E.2d 791 (2012). The evidence presented at that trial has the same standard of proof as it would a regular trial. Thus, the subsequent jury must find, beyond a reasonable doubt, that the previous crime of which the defendant was convicted was a "violent crime." Commonwealth v. Beal, 474 Mass. 341, 351, 52 N.E.3d 998 (2016).

Because of our holding, we do not address whether the invalidated residual clause applies retroactively.

" '[B]odily harm' in this context 'has its ordinary meaning and includes any hurt or injury calculated to interfere with the health or comfort of the [alleged victim]. Such hurt or injury need not be permanent, but must, no doubt, be more than merely transient and trifling.' " Commonwealth v. Carey, 463 Mass. 378, 385 n.10, 974 N.E.2d 624 (2012), quoting Commonwealth v. Farrell, 322 Mass. 606, 621, 78 N.E.2d 697 (1948). Because the prosecutor in this case introduced no evidence as to any harm that the victim suffered, we are left to guess whether the actions described were likely beyond a reasonable doubt to result in "hurt or injury ... more than merely transient and trifling."